# CHARLESTON.

## Rogers *v.* Verlander.

Submitted January 14, 1888.—Decided February 4, 1888.

1. Bill in Chancery—Chancery Pleading—Names of Partners—
   Demurrer.

   When a bill in chancery makes the individuals composing a firm defendants, the bill ought to set out the full names of the members of the firm, or allege that their names in full are unknown and could not be ascertained by the plaintiff after diligent inquiry; and, if it fails to do so, the defendant should be excused by the court from answering or demurring to such bill until proper in-

sertions be made in the bill of the names of the individuals constituting the firm, or it be made to appear to the court that their names can not be ascertained. But such defect is not a good ground for a general demurrer. (p. 635.)

2. ANSWER—CHANCERY PLEADING—GENERAL DENIAL—WAIVER.

A plaintiff has a right to have each and every allegation in his bill, which the defendant controverts, answered specially, and, if denied, they should be specifically and separately denied; and the defendant can not properly deny them by a general denial of all or a number of different allegations together. And, if a defendant file at rules an answer, in which there is such a general denial, the plaintiff may at the next term of the court except to such answer, pointing out specifically the ground of his exception; or, if the plaintiff tender such an answer in court, the plaintiff may object to its being filed, pointing out specifically the grounds of his objection. The court should sustain such specific exception or specific objection. But if the attention of the court is not thus called to the grounds of the exception or objection, and it overrules the same, and the plaintiff replies generally to such defective answer, he will be regarded as waiving all objection to such answer because of such general denial; and it will be regarded just as though a specific and proper denial had been made to each allegation separately. (p. 636.)

3. FRAUDULENT CONVEYANCES—CONSIDERATION—BURDEN OF PROOF—DEBTOR AND CREDITOR—EVIDENCE.

Where a subsequent creditor of a grantor assails in a chancery suit a deed made by the grantor as voluntary and fraudulent, the recital in the deed that the grantee had paid the grantor a valuable consideration, is not evidence against the creditor of such payment; and the burden of proving that a valuable consideration was paid by the grantee to the grantor is upon the grantee, but the burden of proving that the deed was fraudulent in fact is upon the creditor. (p. 638.)

4. FRAUDULENT CONVEYANCES—DEBTOR AND CREDITOR.

A person largely indebted and owning no personal property gives away more than two thirds in value of his real estate, executing a voluntary deed to the grantee, leaving in the grantor real estate which is estimated to be worth very little more than the amount of his existing debts, thus imposing on the creditors the risk of losing a portion of their debts, should such real estate sell for a little less than its estimated value. Such deed should be held to have been executed with an actual fraudulent intent to hinder, delay and defraud his existing creditors; and therefore subsequent creditors of such grantor may have such deed set aside as to them as actually fraudulent and not simply voluntary. Under such cir-

cumstances the grantor, if he would make his voluntary deed valid against his subsequent creditors, must retain property amply sufficient to pay all his existing debts. (p. 654.)

5. FRAUDULENT CONVEYANCES—DEBTOR AND CREDITOR.

A case in which upon the scanty evidence before the court it was held, that the evidence showed, that the grantor in a voluntary deed actually designed to commit a fraud upon his subsequent creditors, but that the cause ought to be remanded to the court below, as it was obvious important facts capable of easy proof, and essential to a just decision of the case, were not before the court. (p. 655.)

6. FRAUDULENT CONVEYANCES—DEBTOR AND CREDITOR.

The points numbered from 4 to 9, inclusive, in the syllabus of *Lockhard* v. *Beckley*, 10 W. Va. 87, approved. (p. 651.)

Statement of the case by GREEN, JUDGE:

This was a chancery suit, brought by J. H. Rogers, in the Circuit Court of Cabell county, against J. W. Verlander and Mary A. Rock and the judgment-creditors of Verlander as well as his creditors secured by deeds of trust on his real estate or parts of it and the trustees in such deed of trust. The object of the suit was to subject the real estate of Verlander to the payment of his debts, which were liens on the whole or any part of such real estate, and also to set aside, both as actually fraudulent and because it was voluntary, a deed from him to his mother-in-law, Mary A. Rock, dated July 2, 1884, conveying or purporting to convey to her a lot of three acres of land in Huntington in said county, on which were two buildings.

The bill was filed at November rules, 1886, and in it the plaintiff alleged that he recovered before T. W. Taylor, a justice of the peace of said Cabell county, on May 26, 1885, a judgment against the defendant, J. W. Verlander, for $195.06 with interest from the date of the judgment and $1.90 costs; and execution was issued on this judgment in June, 1885, which was returned not satisfied, and a like execution was subsequently issued and returned in like manner; which debt the said Verlander incurred January 1, 1883, and no part of it has been ever paid; that Verlander owned, as shown by deeds to him duly recorded, the following property in said county and in the city of Huntington: Lot No. 14 of block No. 92; lot No. 8 of block 92; lot No. 10

of block No. 155; lot No. 3 of block No. 217,—and owned jointly with the defendant, Mary A. Rock, lots Nos. 6 and 7 of block 92; and the value of his said four lots, and individual interest in one moiety of these last two, all together, was not more than $6,500.00, and all his personal estate claimed then by said Verlander did not exceed in value $150.00; that the liens appearing on record in said county on this real estate were (1) a trust-deed-lien on said lots 7 and 14 of block 92, to secure to L. G. Buffington, guardian, $1,100.00, dated February 27, 1883; (2) a trust-deed-lien for $3,000.00, dated February 22, 1884, the said debt being two notes,—one for $1,500.00, payable to John Stanton, and the other for $1,500.00 payable to Stanton & Balmert; (3) a trust-deed-lien on the four lots, being said lots Nos. 14, 8, 10, and 3, to secure three notes to the bank of Huntington for $333.00, $334.00, and $333.00, each indorsed by James Rock, a defendant, and a fourth note of $584.00, indorsed by F. B. Enslow, a defendant. This deed is dated December 13, 1884. Attested copies of all these deeds are filed with the bill, and from these copies it appears they were all properly and legally recorded at their respective dates.

The judgment-liens against said Verlander, which were all docketed legally, were (1) a judgment of W. W. Johnson & Co., rendered January 8, 1885, by a justice of said county, for $260.00, and $2.30 costs; (2) a like judgment, dated August 6, 1885, in favor of John Evans, for $67.00, and $2.40 costs; (3) a like judgment of date September 25, 1885, for $105.38, and $2.00 costs; (4) a judgment of the Circuit Court of Cabell county in favor of Thomas Rutter & Co. against said Verlander, on December 11, 1885, for $600.00, with interest from that date and costs,—this debt, as the exhibits with the bill show, was incurred February 12, 1880; (5) a justice's judgment, rendered August 6, 1886, in favor of Hudson, Tibbie & Co., for $73.58 and $1.98 costs; (6) a like judgment, of date August 26, 1886, for $297.90, and $1.95 costs; (7) a like judgment, of date September 4, 1886, in favor of J. R. Okey, for $84.80, and costs, $1.95; and (8) a like judgment, of date August 31, 1886, in favor of James Morrison & Co., for $114.44, and $1.95 costs. These judgments were all docketed, and the principal sums in them bore interest from the dates of the judgments as ap-

pears from certified official copies filed as exhibits; and the plaintiff's judgment, as above stated, was also proved by a like exhibit filed with the bill. The bill alleges that all these debts are wholly unpaid except the three notes to the bank of Huntington, indorsed by James Rock, amounting, in principal, to $1,000.00. The deeds of trust show from what date each of the debts secured thereby bore interest, and at what rate. The plaintiff's bill then proceeds, and concludes as follows:

"The plaintiff further says that in the year 1883 the defendant, J. W. Verlander, was in business in the city of Huntington, and had for some ten years prior thereto been in the mercantile business in Huntington, and, during such business and carrying on same, contracted a large indebtedness to various parties, among which are the debts to this plaintiff, and to the other defendants, as hereinbefore set out. That in the year 1884, while owing the plaintiff and the judgment lien debtors, the said J. W. Verlander owed, as near as this plaintiff can ascertain, the sum of $10,000.00, or in the neighborhood of that amount, and, as this plaintiff alleges, was indebted to the amount at least of $10,000.00, and to an amount greater than the value of his property left after conveying to Mary A. Rock. That he was then unable to pay his debts. That his real estate, in addition to the said several parcels of land hereinbefore set out, was a tract of three acres of land in West Huntington, Cabell county, on which was and now is his brick residence and a frame tenement house, and also owned all the furniture in said house, and a large amount of chattel · property in and about his said residence; which said three acres of land, with the houses on same, was worth, and is now worth, as the plaintiff is informed, $12,000.00, and the furniture and chattel property $5,000.00; making the total worth of the said J. W. Verlander in real estate $18,500.00, and in chattel property $5,000 00.

The plaintiff also says that he is informed and believes that the said J. W. Verlander, during the time he was in business in the city of Huntington, made large sums of money out of said business, which he invested in the property hereinafter set out and described; and that out of said business the said J. W. Verlander, at a cost of not less than

$15,000.00, built the brick house on the West Huntington lot, and paid for the furniture therein. The plaintiff now alleges and charges that at the time the said J. W. Verlander bought the goods of him, and of the judgment lien creditors, defendants hereto, with which he is now charged, and for which judgments have been obtained, he owned and controlled all the said real estate and personal property; that on the faith of said property he sold said goods to said Verlander; that after said goods were bought of him, and while the said Verlander was indebted to this plaintiff, as well as to the other judgment creditors herein named, and was also indebted to various other persons to an amount larger than all he was worth, he, by deed dated July 2, 1884, conveyed the three acres of land in West Huntington to Mary A. Rock, upon the consideration of one dollar, and in full settlement of certain moneys due by the said J. W. Verlander to the said Mary A. Rock at the date of the deed, as expressed therein. The plaintiff now alleges, and so expressly charges, that at the time the said J. W. Verlander made the said conveyance of his West Huntington property to Mary A. Rock he was insolvent, and unable to pay his debts, and has not paid the same; that the said deed was made without any good or valuable consideration; that the defendant Mary A. Rock is the mother-in-law of the defendant, J. W. Verlander, and resides with the said J. W. Verlander, and that she paid no money or other valuable or good consideration for said property; that the said conveyance was made by the said J. W. Verlander to the said Mary A. Rock with the intent to hinder, delay, and defraud his (J. W. Verlander's) creditors, and to hinder and delay this plaintiff in the collection of his debt; and that such conveyance does hinder and delay this plaintiff in the collection of his debt.

" The plaintiff further alleges and charges that the said property so conveyed by said J. W. Verlander to the defendant, Mary A. Rock, was at the time of said conveyance much greater in value than all the remainder of his said property, being at least twice as valuable as all the remaining property; and that the remaining property of the said J. W. Verlander is not now, nor was it at the time the said deed of July 2, 1884, to Mary A. Rock, was made, ( a certified copy

of which is filed as Exhibit E herewith,) sufficient to pay the debts of the said J. W. Verlander, or even sufficient to pay the lien debts thereon which he then owed. The plaintiff further says that said J. W. Verlander, since said judgments were obtained, claims that he has given the furniture in his said residence to his wife, A. M. O. Verlander, and that he does not own any property, and executions issued on said judgments have been returned no property found on which to levy; and the plaintiff says that the said J. W. Verlander has, so far as he knows, no property, outside of that claimed by his wife, out of which plaintiff's judgment can be collected by execution. The plaintiff now alleges and charges that the conveyance by said J. W. Verlander of the West Huntington property to Mary A. Rock, and the pretended conveyance of all his household furniture and chattel property to his wife, is but a shift and device on the part of the said J. W. Verlander to hinder and delay and defraud his creditors; that such conveyance to Mary A. Rock was made by him while he was largely indebted, and to an amount larger than the value of his remaining property, with the intent to hinder, delay, and defraud his creditors; and that said Mary A. Rock knew of such indebtedness, and united in such intent, and, without any consideration of any sort, took said conveyance to keep the creditors of said J. W. Verlander from subjecting the same to the payment of their claims.

"The plaintiff further alleges and charges that the said conveyance of said West Huntington property to said Mary A. Rock was and is fraudulent and void as to him, and to the creditors of J. W. Verlander, and that unless the said conveyance is set aside, and declared null and void, he will lose his debt; and that, as to him, it is in fact null and void, and his judgment is a lien upon said lot of land in West Huntington. In consideration of all which, the plaintiff prays that his said judgment may be decreed him, and, adjudged a lien on all the property now owned by said J. W. Verlander. And he prays that the said conveyance by J. W. Verlander of said three acres of land in West Huntington to Mary A. Rock may be declared and held null and void, and as of no effect as to this plaintiff's claim, or as to the creditors of J. W. Verlander who may join in this, and that the said deed

of July 2, 1884, recorded in Book K, page 280, may be set aside, vacated, and annulled, and declared null and void, and the said three acres of land subjected to the payment of the debts of the said J. W. Verlander; that to that end all proper orders may be made, and inquiries directed; and and that all such further and general relief may be granted him as to equity may seem fit, and the case require; and he will ever pray," etc.

Exhibit E, referred to in this bill, is a deed thus worded: "This deed, made and entered into this 2d day of July, 1884, between J. W. Verlander, of the first part, and Mary A. Rock, of the second part, both of the city of Huntington, in Cabell county, West Virginia, witnesseth, that in consideration of the sum of one dollar in hand paid to the said J. W. Verlander by the said Mary A. Bock, the receipt whereof is hereby acknowledged, and of further valuable consideration and in full settlement of certain moneys due by the said J. W. Verlander to the said Mary A. Rock at this time, the said J. W. Verlander hereby grants and conveys with general warranty, to the said Mary A. Rock, the following parcel or tract of land, together with all the buildings, appurtenances, and improvements thereunto appertaining and belonging, situated in West Huntington, in the county of Cabell and State of West Virginia, on the Ohio river, bounded and described as follows." [Then follows a minute description of the parcel of land conveyed, containing three acres conveyed to the grantor by deed dated September 12, 1878, and duly recorded.] This deed is executed, being signed and sealed by J. W. Verlander, and duly acknowledged and recorded July 2, 1884. The other exhibits filed show that on many of the judgments rendered by the justice against J. W. Verlander executions had been issued, which were returned "Not satisfied," or "No property found."

This bill was headed in the name of the plaintiff against all the defendants above named; but the names of the individuals composing the firms in whose favor these several judgments were rendered were left blank. The process was served on all the known defendants, and order of publication made and duly executed as to all the non-resident

defendants, but in it the names of many of the individuals comprising the firms in whose favor those judgments were rendered were left blank. On October 26, 1886, Mary A. Rock filed a demurrer to this bill, alleging in it grounds of demurrer, and, it being joined in by the plaintiff, the court overruled her demurrer; and she then tendered an answer, which the record states " the plaintiff objected to, on the ground that the same was insufficient." The objection was overruled by the court, and the answer was then filed, as well as the answer of Thomas Rutter, John R. Rutter, and John A. Quintard, partners under the name of Thomas Rutter & Co. These answers were all replied to generally.

The answer of Mary A. Rock was as follows : " The separate answer of Mary A. Rock to the bill of complaint of J. H. Rogers, doing business as J. H. Rogers & Co., plaintiff, against J. W. Verlander, Mary A. Rock, and others, filed in the Circuit Court of Cabell county, West Virginia. This respondent, Mary A. Rock, saving and reserving to herself now, and at all times hereafter, the benefit of all just and proper objections and exceptions to the said bill of complaint on account of the manifold errors and inconsistencies therein, for answer to the said bill of complaint, or to so much thereof as she is advised it is necessary for her to answer denies each and every allegation of the said bill of complaint, and calls upon the plaintiff for proof of each and every the averments therein made; and your respondent expressly denies that the defendant, J. W. Verlander was insolvent on the 2d day of July, 1884, when the deed was executed by the said Verlander conveying to this respondent the three acres of land with improvements thereon, as mentioned in the said bill of complaint; and further denies that the property of the said defendant, Verlander, was at that time, to-wit, on the said 2d day of July, 1884, insufficient to pay all the just and legal debts then due by the said Verlander, but, on the contrary thereof, avers that the real and personal property of the said defendant, Verlander, was sufficient, after the said three acres of land had been so conveyed to your respondent as aforesaid, to meet all just demands then existing against the said defendant, Verlander.

" Your respondent further denies that said conveyance of said three acres by the said defendant, Verlander, to this respondent was, as is charged in said bill of complaint, a shift and device on the part of the said J. W. Verlander to hinder and delay and defraud his creditors; that such conveyance was made to this respondent by the said defendant, Verlander, with the intent . to hinder, delay, and defraud his creditors, and this respondent knew of and united in such intent, and, without any consideration of any sort, took said conveyance to keep the creditors of said defendant, Verlander, from subjecting the same to the payment of their claims.   This respondent further expressly denies that the said conveyance of the said three acres, with the improvements thereon, by the said defendant, Verlander, to her, was fraudulent and void as to the said plaintiff, J. H. Rogers & Co., and to others, the creditors of the said defendant, Verlander.

"And this defendant, further answering, says that in October, 1871, she, having sold certain valuable real estate which belonged to her in the city of Richmond, Va., with the proceeds of said sale, as her sole and separate property, jointly with the said defendant, J. W. Verlander, purchased certain valuable properties in the city of Huntington, West Va., to-wit, lots Nos. 6 and 7 of block 92 on 2d avenue, and also purchased for herself certain other valuable properties in the said city of Huntington, to wit, three houses and lots near the Ensign Works, on 3d avenue.   That from March, 1872, till April, 1883, the said defendant, J. W. Verlander, used, occupied and rented the said properties on 2d avenue, of which the brick-house rental was $50.00 per month, or $600.00 per annum and the frame-house rental was from $25.00 to $32.00 per month; a fair average of which was $342.00 per annum.   That the one half of the said rents belongs to this respondent, and that no part thereof, principal or interest, had been paid to this respondent by the said defendant, J. W. Verlander, or by any one for him, up to the 2d day of July, 1884, the date of the said conveyance of the said three acres.   That the one half part of the rents and profits of the said brick and frame houses on 2d avenue so belonging to this respondent, as hereinbefore alleged,

and due to her from the said defendant, J. W. Verlander, amounted on the said 2d day of July, 1884, to the sum of $7,046.16. That in April, 1883, the said brick and frame houses on 2d avenue were destroyed by fire, and the insurance on both of said houses, amounted to the sum of $5,-200.00, which was paid by the insurance companies to the said defendants, J. W. Verlander, of which sum of $5,200.00 one-half thereof belonged to this respondent; and that neither the said one half of the said insurance, nor any part thereof, had been paid to this respondent by the said J. W. Verlander up to the 2d day of July, 1884, the date of the said conveyance of the said three acres. That the one half part of the said insurance money, with interest at six per cent. thereon, due from the said defendant, Verlander, to this respondent on the 2d day of July, 1884, amounted to the sum of $2,756.00. That for ten years the said defendant, J. W. Verlander collected the rents of the said three houses, belonging to this respondent, situated on 3d avenue near the Ensign Works, and that said three houses rented $30.00 per month, or $360.00 per annum; and that the amount due, principal and interest, on the said 2d day of July, 1884, from the said J. W. Verlander to this respondent, for and on account of the rents of the said three houses, so collected as aforesaid, amounted to the sum of $4,895.00.

This respondent now says that on the said 2d day of July, 1884, the said defendant, J. W. Verlander, was justly indebted to her, by reason of the matters and things hereinbefore alleged, in the just and full sum of $14,698.16 ; and that, in full settlement of said indebtedness, the said J. W. Verlander executed, and this respondent accepted, the conveyance of the said three acres of land, with all the improvements thereon, of date the 2d day of July, 1884. That it was so expressed on the face of said deed, and that the said deed was executed in good faith, for a full and valuable consideration, and without any knowledge on the part of this respondent of the debt of the said plaintiff and other creditors of the said J. W. Verlander." The following affidavit is appended to this answer: "*State of West Virginia, Cabell County—to wit:* James Rock, for Mary A. Rock, the

defendant named in the foregoing answer, being duly sworn, says that the facts and allegations therein contained are true, except so far as they are therein stated to be on information, and that, so far as they are therein stated to be on information, he believes them to be true."

There was no affidavit to the bill; and what James Rock knows about the matter contained in the answer, to which he made affidavit, or his relation to the respondent does not appear, though I suspect he was the respondent's husband.

The answer of the defendants composing the firm of Thomas Rutter & Co. states in detail the character of their judgment against J. W. Verlander, rendered by the Circuit Court of Cabell on December 11th, 1885, and how the debt, for which it was rendered ($600.00), originated; and the exhibits filed with the answer show that this debt originated on January 1st, 1880, some four years and a half before J. W. Verlander made what is claimed as a fraudulent and voluntary deed of three acres of land and buildings, to his mother-in-law, Mary A. Rock. This answer concludes thus : "These respondents pray for affirmative relief as follows : That the cause may be referred to a commissioner to take, state, and report—*First*, the real estate owned by the said J. W. Verlander; *second*, the liens on all the real estate of the said J. W. Verlander, the amount of each, and their respective priorities. They further pray that their judgment *vs.* Sullivan, Montrose, and others may be held to be the first lien on lot 8, block 92, aforesaid; that their judgment *vs.* Verlander may be decreed to be a lien on all the real estate of said Verlander; that said lot 8 may be sold, as well as enough other real estate of said Verlander sufficient to pay off and discharge the amount due these respondents. They further pray that in the event said lot 8, and the real estate of said Verlander outside of the West Huntington property, is not sufficient to pay off and discharge these respondents' liens, and those which may be declared to be prior thereto, that then the conveyance from Verlander to Mary A. Rock for said West Huntington property may be set aside as null and void, and that the same may be sold, and out of the proceeds of the sale thereof these respondents' judgments may be paid in full. They also ask such other, further general relief as the court may see fit to grant."

On December 13th, 1886, the court entered a decree referring the cause to a commissioner to report on—*first*, what real estate the defendant J. W. Verlander owned, was seized and possessed of on the 2d day of July, 1884, the date of the transfer of property in West Huntington to Mary A. Rock, and also what personal and chattel property said Verlander owned on that date; *second*, what debts were due and owing by said J. W. Verlander on the 2d day of July, 1884, to whom owing, how evidenced, for what contracted, and amounts thereof; *third*, what real estate the defendant J. W. Verlander now owns, its nature and value, the liens thereon, their nature, amounts, and priorities; *fourth*, what was the consideration paid by Mary A. Rock, if any, to J. W. Verlander for the West Huntington property, and what was the value of said property; *fifth*, what consideration, if any, passed from A. M. C. Verlander, wife of J. W. Verlander, to J. W. Verlander for the furniture and household effects now claimed by A. M. C. Verlander, and what was the value of said property so claimed by said A. M. C. Verlander; *sixth*, any other matter any of the parties may desire, or the commissioner deem pertinent."

On March 4, 1887, the commissioner returned his report. He reported that on July 2d, 1884, the date of the deed by J. W. Verlander to Mary A. Rock of his residence in West Huntington and of the real estate named in the bill lying in Huntington, the four lots owned by him were worth $5,000.00; and that his undivided moiety of lots 6 and 7, named in the bill, was worth $450.00. He then states the amount of the several debts secured by deeds of trust named in the bill, and also the lots on which they were liens, and also the judgment-liens against J. W. Verlander, and the priorities of these liens, both by deeds of trust and by judgments, on each of these lots owned by J. W. Verlander. The whole amount of the liens, with interest to February 14th, 1887, was $7,989.56. These included what remained unpaid on the three deeds of trust named in the bill, on all the judgments named in the bill, as well as on five other judgments against J. W. Verlander rendered in said county in favoː of the several parties, reported since the institution of this suit. These five judgments amounted to $538.30. Though the com-

missioner does not state what was the amount due on the debts secured by the two deeds of trust executed prior to July 2d, 1884, when he made the deed to his mother-in-law, Mary A. Rock, claimed to be fraudulent and void, yet as he states the amounts due on these debts separately as well as on the judgment to Thomas Rutter & Co. on a debt, which was also contracted long before July 2d, 1884, we can calculate the amount due on February 14th, 1887, including interest to that date on these judgment lien debts, and on three deed of trust debts, which the record shows were debts certainly contracted prior to July 2d, 1874, the date of the deed to his mother-in-law, Mary A. Rock. These prior debts, unpaid, with interest amounted on February 14th, 1887, to $5,676.22, or a little more than the value of all his real estate, excluding what was conveyed to his mother-in-law, Mary A. Rock, on July 2d, 1884; though if interest were abated on these debts to July 2d, 1884, the amount at that time would be a little less than the estimated value of all his real estate, excluding what he then conveyed to Mary A. Rock, for which, in her answer, she claims she gave up debts against him amounting to $14,698.16, which may therefore be regarded as the value of the three acres and buildings conveyed to her.

The commissioner concluded his report as follows: " Your commissioner would further report that there was no proof offered on the subject of consideration from Mary A. Rock to said J. W. Verlander for the residence in West Huntington; nor was any evidence offered as to what personal property the defendant Verlander had on the 2d day of July, 1884, nor as to what debts he owed at that time, nor as to what, if any, consideration passed from the defendant, A. M. C. Verlander, wife of J. W. Verlander, for the household furniture. And as to these requirements he is unable to report."

The following exc..ption was filed in proper time to this report: " The plaintiffs, J. H. Rogers & Co., and the judgment lien creditors except Thos. Rutter & Co., object and except to the within report because the same does not report that the conveyance of J. W. Verlander to Mrs. M. A. Rock of the West Huntington property was without consideration, and void as to them and their debts; and also except to the

report because the same does not show that the liens of the judgments against the defendant, J. W. Verlander, are also liens on the property in West Huntington so conveyed to Mrs. M. A. Rock, which they in fact are."

The report showed that all the required and proper notices had been given by the commissioner. But a single deposition was taken before the commissioner, and that only in reference to the amounts which had been paid on lien-debts, and the value of the real estate of Verlander. But there was no testimony as to the value of the three acres conveyed to Mary A. Rock, or anything whatever in relation to the conveyance to her by Verlander.

On March 30, 1887, the court rendered the following decree: "This day this cause came on to be heard upon the bill and exhibits filed therewith, and the proceedings had thereon at rules, the answer of Thomas Rutter & Co. and of Mary A. Rock with the general replication thereto, upon the decrees and orders heretofore made, and upon the report of Geo. J. McComas, commissioner, to whom this cause was referred for report, filed March 4, 1887, with the consent of the parties, by their attorneys, indorsed thereon, with the testimony filed and returned therewith, and with the exceptions of the plaintiffs and judgment lien creditors to said report indorsed thereon, and was argued by counsel. And it appearing to the court that the plaintiffs are entitled to the relief prayed for in their bill, and that the liens on the property of the plaintiffs are as set out in the report of Geo. Mc Comas; and it also further appearing to the court that the defendant, Mary A. Rock, has failed to show that she paid anything for said tract of three acres of land in West Huntington conveyed to her by J. W. Verlander by deed bearing date July 2, 1884, as set out in the plaintiffs' bill, and that the said conveyance of said tract of three acres of land by said deed of July 2, 1884, and said deed, was without consideration, therefore of no effect as to the judgment lien creditors, and that the said conveyance was made with the intent to hinder, delay, and defraud the creditors of said J. W. Verlander, and is null and void, and subject to the claims of the creditors of J. W. Verlander,—in consideration of all which the court, approving and sustaining the said report of Commissioner McComas

as far as it reports the priorities of the judgments and liens upon said property of J. W. Verlander, but sustaining the objection and exception of the plaintiffs and judgment lien creditors to said report, doth adjudge, order, and decree that the said conveyance made by J. W. Verlander, dated July 2, 1884, conveying the tract of three acres in West Huntington to Mary A. Rock, be, and the same is hereby, set aside, declared null and void, and of no effect as to the debts of said J. W. Verlander; and that the said tract of three acres of land be, and the same is, subject to the lien of the judgment set out in the said report of Geo. J. McComas, commissioner." The decree then proceeds to determine the liens on each several lot owned by Verlander as it had been reported by the commissioner, as also the liens on the three acres of land in West Huntington conveyed to Mary A. Rock, they being all the judgment liens against J. W. Verlander as reported, and in the order of priority reported by him. And, if said liens are not paid within 30 days, F. B. Enslow was appointed a special commissioner to sell said real estate on terms which are usual and reasonable. And the decree then concludes: "And in making said sales the lots still standing in the name of J. W. Verlander shall be sold first, before the said tract of three acres of land in West Huntington is sold; and in case the said property not attempted to be conveyed away by J. W. Verlander, shall sell for sufficient to pay the debts herein decreed, and the costs of suit, then no sale of the three acres shall be made; and in case of sale the said special commissioner shall pay first out of the proceeds of each separate piece of property its *pro rata* share of the costs of suit and sale, and then pay over to the respective parties the several sums due them, respectively, and shall report any sale he may make to this court for its action. Before proceeding under this decree, the said special commissioner shall give a bond in the penalty of five thousand dollars, with security to be approved by the clerk of this court, conditioned for the faithful discharge of his duties as special commissioner under this decree."

From this decree Mary A. Rock has obtained an appeal.

*Gibson & Michie* for appellant.

*Simms & Enslow* for appellees.

Green, Judge :

Was there any error in the court overruling the general demurrer of the defendant Mary A. Rock to the bill ? I see no ground, on which a special demurrer to this bill could properly have been sustained, except only the fact, that many of the defendants judgment-creditors of J. W. Verlander, as members of certain partnerships, who had obtained judgments before a justice of the peace, are not named in the title of the case at the head of the bill, as they should have been, unless after diligent inquiry the plaintiff had been unable to ascertain the individual names of these partners and had so stated in his bill. This was not stated in the bill and, I suppose, could not have been so stated truthfully, as the counsel for the plaintiff in the cause afterwards appeared as counsel for these judgment-creditors. I suppose, the individual names of these partners were not stated in the bill, simply because the judgments rendered by the justice in their favor did not disclose them, and the counsel for the plaintiff did not choose to take the trouble to ascertain their names before filing his bill. If the defendant Mary A. Rock had demurred to this bill specially for this defect, such special demurrer ought to have been sustained according to the ancient practice, and the plaintiff would have been required to amend his bill, and so he would have saved himself no trouble, but only have suffered inconvenience and delay by his failure to ascertain the names of the partners composing the firms that were made defendants.

But such a defect in a bill, while a good ground for a special demurrer, is not a good ground for general demurrer ; but according to our practice, if the defendants or any of them had asked the court, it ought to have excused them from demurring or answering such defective bill, till the names of the partners composing the firms were inserted in the bill, or until it was made to appear to the satisfaction of the court, that their names could not be ascertained. By the twenty fifth section, ch. 50, Code W. Va., 1887, p. 432, a partnership may bring a suit before a justice in its partner-

ship name without setting out the names of the individuals composing the partnership; but in no suit in a Circuit Court is such loose pleading proper. If it be a common-law suit, the defendant may take advantage of such a defect in the declaration by a plea in abatement; or, if it be a chancery suit, the defendant may take advantage of such a defect in the bill, as formerly, by special demurrer.

The next inquiry is: Should the Circuit Court have refused to permit Mary A. Rock to file the answer she tendered on December 6, 1886, it being objected to by the plaintiff, on the ground that it was insufficient, but the record not showing that the plaintiff in his objection pointed out any defect in the answer specifically, such, for instance, as that it contained a broad and general denial of all the allegations in the bill, and called for proof of each and every allegation in the bill? By chapter 125, § 36, p. 785, Code 1887, it is provided, that every material allegation of a bill, not controverted by an answer, shall be taken as true. The only proper mode of controverting any allegation in a bill is for the answer to deny or controvert such allegation specifically. A general denial of all the allegations in a bill, such as is contained in the answer of Mary A. Rock, is not proper pleading; and, if her answer had been filed at rules, the plaintiff would at the next court have excepted to such answer because it contained such general denial of all the allegations in the bill, and the court ought to have sustained such exception and required such general denial to be stricken out of the answer, and in lieu of it required the defendant to deny or answer specifically every allegation which he controverted. And if as in this case such an answer was tendered by a defendant, containing such general denial of the allegations of the bill, the plaintiff could object to the filing of such an answer, because it contained such general denial, and the court ought to sustain such objection, and refuse to permit such an improper answer to be filed. But the plaintiff, in such exception or objection, must point out to the court the fact that the answer is improper because of such general denial of the allegation of the bill, so as to call the attention of the court to this particular defect in the answer; and if he fails to do so, and his exception or objection

is overruled, and he files a general replication to such answer, he must be regarded as having waived any objection to the answer on account of such improper mode of pleading, and must prove the material allegations in his bill, just as he would be required to do had the denial of each of them been in proper form, and a specific denial. See *Core* v. *Bell*, 20 W. Va. 174; *Warren* v. *Syme*, 7 W. Va. 474; *Burlew* v. *Quarrier*, 16 W. Va. 109; *Richardson* v. *Donehoo*, Id. 685.

It may be said that it is useless to require the defendant to answer or deny each allegation in the bill which he means to controvert, as it would only require a writing out and denying in such answer of each allegation in the bill separately; thus increasing its bulk without changing its meaning. In the first place, such a general denial of all allegations in a bill, not specifying each allegation denied, but including many uncontroverted allegations, would be made often by the person preparing such an answer when he would not, if merely to save cost, delay, and trouble to himself, make a specific denial of uncontroverted facts; and this would be much more certainly the result if the answer had to be drawn in detail, and sworn to; and this the plaintiff could require in every case by simply swearing to his bill (see chapter 125, § 38, Code 1887, p. 786;) and such answer would have no more weight than an answer not sworn to by the defendant. And, in the second place, if the answer was not thus required to be sworn to, the defendant, by denying each and every allegation of the bill specifically and separately, would at least call, in this specific manner, to the attention of the plaintiff the necessity of proving every allegation in his bill so denied; and thus, at least, prevent a cause being presented to the court for a hearing when facts perfectly easy to be proven were unsustained by evidence, through carelessness.

The case before us is a good instance of the evil effects of such loose and improper pleading. There is in this answer a general denial of all the allegations in the bill; and this answer is sworn to, not by the respondent, but by one James Rock, whose affidavit to it was of course unauthorized by any law. And this general denial of all the allegations in the bill included in it a denial of very many allegations of fact

which were of such a character that I cannot suppose they can with any truth be denied, and which would not have been separately and specifically denied; such, for instance, as these allegations: That Mary A. Rock was the mother-in-law of J. W. Verlander; that they resided together; that in 1883 he was in the mercantile business in the city of Huntington, and had been in this business for 10 years prior to that time; that during this time he contracted the debt of the plaintiff sought to be enforced, and all the other debts named in the bill on which judgments were afterwards rendered; that he owned the various parcels of real estate named in the bill; that he gave deeds of trust on portions of his real estate to secure certain debts; that he conveyed about three acres of his land, on which he had built a costly residence, to his mother-in-law, Mary A. Rock, on July 2, 1884, by the deed filed with the bill. Many of these allegations are proven by the exhibits filed with the bill, while many others which were doubtless true are not proven, though thus sweepingly denied; though, had there been, as there should have been, a specific denial of each separate allegation controverted,— had they been so denied,—they would have been, in all probability, proven by the plaintiff, as they were important allegations in aid of the plaintiff's case, and there was no difficulty in proving them if, as I suppose, they were true.

The next and most important inquiry in this case is, upon whom is the burden of proving that the deed made by J. W. Verlander to Mary A. Rock on July 2, 1884, conveying his residence and three acres of land in the city of Huntington, an attested copy of which is filed with the bill, was made for a valuable consideration, and was not merely voluntary, as alleged in the bill? There is not a particle of evidence in the cause to show whether this deed was made for a valuable consideration or voluntarily, unless the recitals in the deed as to what was the consideration can be regarded as evidence in this cause. These recitals are that this deed was made "in consideration of the sum of one dollar paid to the said J. W. Verlander by said Mary A. Rock, the receipt whereof is hereby acknowledged, and of a further valuable consideration, and in full settlement of certain moneys due by said J. W. Verlander to said Mary A. Rock, (July 2, 1884.)" If

this can be regarded as evidence against the plaintiff and other creditors of J. W. Verlander, who are assailing this deed as voluntary and fraudulent as to them, then it proves that the deed was made for a valuable consideration; but, if it be not evidence against them, then there is not a particle of proof in the cause to show that this deed was made for a valuable consideration. And hence the importance of determining upon whom the burden of proving the consideration lies.

The appellant's counsel, it is true, claims that the allegations in the answer of Mary A. Rock in reference to the consideration paid by her to J. W. Verlander for said three acres of land conveyed by this deed are to be regarded as evidence in her behalf, against the plaintiff and other creditors of J. W. Verlander, as they were responsive to the allegations on the subject in the bill. These allegations in the answer were " that on the 2d day of July, 1884, (when said deed was executed to her,) the said J. W. Verlander was justly indebted to her, by reason of the matters and things hereinbefore alleged, in the just and full sum of $14,968.16, and, that, in full settlement of said indebtedness, the said J. W. Verlander executed, and this respondent accepted, the conveyance of the said three acres of land, with all the improvements thereon; and that said deed was executed in good faith for a full and valuable consideration and without any knowledge on her part of the debt to the said plaintiff and other creditors of J. W. Verlander." In the previous part of her answer she had set out in detail the various items which she says made up this indebtedness of J. W. Verlander to her, thus settled by them. To sustain his position that these allegations in the answer are to be considered as evidence for Mary A. Rock against the plaintiff, as they are responsive to allegations in the bill, the appellant's counsel refer to 2 Story Eq. Jur., § 1,528, and other text-writers. These authorities simply lay down the rule, universally recognized, that prior to the passage of statute-law regulating the pleadings in chancery causes the rule in equity was, in the language of Story: " In every case the answer of the defendant to a bill filed against him, upon any matter stated in the bill, and responsive to it, is evidence in his own favor."

And the reason given by Story and others for this rule is: "As the plaintiff calls upon the defendant on oath to answer an allegation of fact, which he makes, he hereby admits the answer to be evidence of that fact."

But this effect of an answer responsive to a bill has been changed by our statute, as well as by the statute-law of most, if not all, of the States. In this State, under our statute-law, answers are not usually sustained by the respondent's affidavit; and their effect has been changed entirely. They are, under our statute law, no longer to be regarded as evidence in any case, whether they be sworn to or not. They are simply pleading, and have effect as such only, just as a plea in a common-law case, whether it be sworn to or not, has no effect as evidence. And hence, to use the language of section 36, ch. 125, Code 1887, p. 785, "every material allegation of a bill, not controverted by an answer, shall, for the purpose of the suit, be taken as true, and no proof thereof shall be required." This is the exact effect of a plea at common law. And section 38, ch. 125, Code 1887, p. 786, provides that, "if the plaintiff desires the defendant to answer the bill on oath, he must verify his bill by affidavit, and, if the bill be so verified, the defendant must in like manner verify his answer; but, if the bill be not verified, the defendant need not verify his answer, and, if he does so, it shall not be entitled to any more weight in the cause than if it had not been verified." In other words, the only weight the answer has in any cause is the weight attached to it as pleading. In no case is it entitled now to any weight as evidence. In this respect it stands on the same footing as pleas at common-law. They are never entitled to the weight of evidence, though the particular plea may be required to be supported by affidavit; as, for instance, pleas in abatement, and pleas of *non est factum.* See section 39, ch. 125, Code W. Va., p. 786.

This being the law, the question to be considered is the effect of a statement in a deed that it was made for a valuable consideration. It is obviously an admission or acknowledgment by the grantor that such is the fact; and it would seem clear that such a recital would be *prima facie* evidence of its truth as against him, and all persons claiming under him. And, for the purpose of supporting the deed as against

him, the recital of a valuable consideration therein would be conclusive against him; for though it be proven there was no consideration, in point of fact, for such deed, yet, as a grantor may make by such a deed a gift to a stranger, such deed must be good against the grantor or his heirs, or a subsequent purchaser for value, in the absence of fraud. While, then, there can be no doubt that, as against a grantor and his heirs, the acknowledgment in a deed that a consideration has been paid is *prima facie* evidence of the truth of the fact recited, yet the decided weight of the authorities is that such a recital in a deed is not any evidence of such fact, as against a stranger, or as against a creditor of the grantor, assailing such deed as voluntary. The real basis of these decisions would seem to be, that, if the payment of a valuable consideration is a fact essential to the maintaining a claim, this fact must be proven as other facts are proven. This acknowledgment of the receipt of a valuable consideration for a deed, made by the grantor in the body of his deed, should have the weight of a like acknowledgment made by him in writing in any other manner, as by a receipt signed by him. It is, after all, nothing but an admission by the grantor that he has received a valuable consideration for the land conveyed. And, on general principles, declarations or admissions made by a person out of the presence of another cannot prejudice such other, when there is no relation of privity, mutual interest, or agency between the person making such declaration or admission and such third person. As, however, the authorities on this point differ, I propose to quote the language of judges, who have differed from them, selecting those who seem to me to have presented their views in the most forcible manner.

In the case of *Kimball* v. *Fenner*, 12 N. H. 248, the Court held that the recital of the payment of a valuable consideration was not evidence of this fact, as against creditors of the grantor attaching it as fraudulent and voluntary. Parker, C. J., delivering the opinion of the court, says: "A voluntary deed is one made without any consideration, and such a deed is presumed to be fraudulent as against existing creditors. *Reade* v. *Livingston*, 3 Johns. Ch. 500; *Parsons* v. *McKnight*, 8 N. H. 37; *Carlisle* v. *Rich*, Id. 48; Cruise

Dig. 221; 2 Hil. Abr. 421, pl. 16; *Smith* v. *Lowell*, 6 N. H. 69; *Smith* v. *Smith*, 11 N. H. 465. If there be anything to rebut this presumption, it must be shown by the grantee. No man has such a power over his own property to dispose of it so as to defeat his creditors unless for a consideration. *Partridge* v. *Gopp*, Amb. 596; cited, *Hadden* v. *Spader*, 20 Johns. 567. The question may be stated, then, in other words: Whether a deed which purports to be executed upon a pecuniary consideration, and contains an acknowledgment of the receipt of it, furnishes, of itself, evidence that such consideration was in fact received, or whether, as against existing creditors, it is not to be regarded as a mere voluntary conveyance, and presumed to be fraudulent, until some evidence is offered of the consideration upon which it was executed. There is no doubt that the clause acknowledging the receipt of a consideration furnishes evidence against the grantor that the consideration specified has been paid; and this receipt being under seal, and a part of the deed itself, cannot be contradicted by him for the purpose of defeating the instrument. *Morse* v. *Shattuck*, 4 N. H. 229. * * * Upon what principle is it that this mere receipt, which may be contradicted and controlled between the parties, is even *prima facie* evidence of the payment of a consideration, against a third person, who shows a *prima facie* title by or levy on the land which belonged to his debtor, and who is no party to the deed, has in no way admitted its validity, and has, or may have, no knowledge respecting the transaction upon which it is founded? He is not in privity with the title of the grantor; on the contrary, it is adverse to him. * * * It is not within the principle which admits the notes and judgments in favor of the plaintiffs in this case as *prima facie* evidence that they were creditors of the grantor, being good evidence against him of that fact. *Reed* v. *Davis*, 5 Pick. 388. The notes to the plaintiffs, proved to be signed by the grantor, or evidence that he made such contracts, and, of course, *prima facie* evidence that he then owed such debts; which is sufficient, in the first instance, for the plaintiffs, so far as that point is concerned. The deed to the defendant shown to be executed by the grantor is evidence that he made such conveyance,

and *prima facie* evidence that, as to him, the land has passed to the defendant. But this is not sufficient for the defendant on this point. Something more is necessary to make out a *prima facie* case against the plaintiffs, (they having shown themselves to be existing creditors,) and that is evidence that the deed was upon a sufficient consideration; otherwise, it is only a voluntary deed. * * * A verbal admission or declaration of the grantor that there was a consideration which had been paid would be good evidence, as against him, to establish that fact, but not against third persons. *Braintree* v. *Hingham*, 1 Pick. 245. And so of a mere receipt, or any other writing disconnected from the deed. *Jackson* v. *Richards*, 6 Cow. 617, 623.ˈ We are not aware of any rule by which a seal can add to the authority of the receipt, or give it the character of competent evidence against parties having no connection with it. *M'Crea* v. *Purmort*, 16 Wend. 474. It would still be hearsay evidence or, rather, *res inter alios acta*. 3 Starkie Ev. 1,300; 1 Phil. Ev. (Cow. & H. Ed.) 229 *et seq.*, and notes 432–435. The actual payment of the money, or other things mentioned in it, must still be proved. * * * Iń *Foster* v. *Hall*, 12 Pick. 89, it does not appear from the report that the defendants were existing creditors at the time of the conveyance. Their attachment was made subsequently; and no evidence appears to have been offered to show when their debts accrued, or any other attempt to maintain any right for them, other than as subsequent creditors who must show fraud. * * * Fraudulent deeds always express a consideration. If the deed is *bona fide*, the grantor knew what the consideration was, and where to find the evidence of it. The subscribing witnesses often have no knowledge respecting it. If no one but the grantor has the knowledge, he may be made a witness by the grantee. If there be a hardship sometimes upon a *bona fide* grantee who is compelled to maintain his title against a creditor, there would be quite as often a greater hardship upon creditors if they were compelled to disprove the existence of a consideration merely because their fraudulent debtor had admitted that he had received one."

There are many decisions in Pennsylvania, that a receipt

in a deed for the purchase-money is no evidence whatever of the fact of its payment against a stranger or against creditors of the grantors attacking such deed as fraudulent; and they are based on reasoning similar to that on which this New Hampshire case was based. See *Clark* v. *Depew*, 25 Pa. St. 515; *Penrose* v. *Griffith*, 4 Bin. 231. See, also, *Dean* v. *Connelly*, 6 Pa. St. 239; *Poyntell* v. *Spencer*, Id. 254; *Siltzell* v. *Michael*, 3 Watts & S. 332; *Canal Co.* v. *Young*, 1 Whart. 432; *Rogers* v. *Hall*, 4 Watts 362; *Bolton* v. *Johns*, 5 Pa. St. 151; *Henry* v. *Raiman*, 25 Pa. St. 360; *Floyd* v. *Lynch*, 28 Pa. St. 419. And so it has been held in Alabama. See *McCain* v. *Wood*, 4 Ala. 264; *Bank* v. *Kinsey*, 5 Ala. 12; *Doe* v. *Reeves*, 10 Ala. 137. So in Texas. See *Hawley* v. *Bullock*, 29 Tex. 217–224; *Watkins* v. *Edwards*, 23 Tex. 447.

The question we have been considering has been perhaps more frequently discussed in cases, where the controversy has been between a purchaser under a prior unrecorded deed and a subsequent purchaser in good faith and for a valuable consideration, whose conveyance has been duly recorded; and on this question it has been sometimes held, that in such a case the recital of the payment of a valuable consideration in the subsequent recorded deed was *prima facie* evidence, as against the prior purchaser, that such subsequent purchaser had paid a valuable consideration. But the reasoning on which this is maintained is based in part upon the policy of the recording acts. This reasoning, whereby these views are sustained, is set forth more fully and clearly in the dissenting opinion of Campbell, C. J., in *Shotwell* v. *Harrison*, 22 Mich. 423. And this was also held to be the law in *Jackson* v. *McChesney*, 7 Cow. 360; *Wood* v. *Chapin*, 13 N. Y. 509; and the case of *Gaugh* v. *Henderson*, 2 Head 629, may be perhaps regarded as based on like principles, and opposed to the views expressed in *Kimball* v. *Fenner*, 12 N. H. 248. This point in this case was afterwards by the same court, in *Bayliss* v. *Williams*, 6 Cold. 445, spoken of as a point which did not seem to have been carefully discussed or considered in the case in 2 Head. But the case of *Nolen* v. *Gwyn*, 16 Ala. 725, is opposed to these New York cases as well as to the views of the majority of the court in

*Shotwell* v. *Harrison*, 22 Mich. 418. I do not propose to do more than refer to these cases, as it will be seen from the opinions pronounced in the latter case, that the policy of the recording statutes has exercised a large influence with those judges who have held, that the recitals of the payment of the consideration by the grantee in the subsequent recorded deed was *prima facie* evidence against the grantee in a prior unrecorded deed. Upon this question the authorities seem to be pretty equally divided; though in other cases the decided weight of authority seems to be that the recital in a deed of the payment of the consideration is not evidence as against a stranger, nor as against a creditor of the grantor assailing the deed as voluntary and fraudulent. In addition to the many cases already referred to as sustaining this view, I would refer to *Long* v. *Dollarhide*, 24 Cal. 218, and *Galland* v. *Jackman*, 26 Cal. 80.

The appellant's counsel rely especially on certain Iowa cases as sustaining the contrary view. I do not think they are entitled to much weight with us, and they are foreign to the cases under consideration. The first of the cases was *Jackson* v. *McGrew*, 11 Ia. 153. All that is said by the Court on this subject is this: " When a sale by a debtor is attacked by a creditor upon the ground that it was made without consideration, and for the purpose of defrauding creditors, which allegations are positively denied by the answer, and especially that portion of the bill which alleges that the conveyance was voluntary, and when the cause was heard on bill and answer, *held*—" The burden of proof was on the complainant; and, the answer not being overcome by the requisite amount of proof, the court did not err in dismissing the bill." This case is claimed to be very similar to the one before us; but it seems to me to be most strikingly dissimilar. The cause was heard on bill and answer, there being no general replication to the answer. Of course, therefore, as a mere matter of pleading, the allegations in the answer were to be taken as true, as the plaintiff filed no replication. The question, which, it seems to me, would arise in such a case, would be whether the plaintiff would not be estopped from denying the allegations in the answer by any proof. He ought not on principle to be allowed to

do so, unless the statutes of Iowa permitted him; whether they do so or not is not stated. And this opinion is so brief and unsatisfactory as to be entitled to no weight. It is highly probable it was correct under the Iowa statute-law, not even referred to by the court.

*Wright* v. *Wheeler*, 114 Ia. 14, is the next case. It is on this subject nothing but a repetition of what is said in the above case, on which it is based. It is not, as in that case, distinctly stated that the cause was heard on bill and answer; but the contrary does not appear, and I presume from what is so briefly stated in the opinion, that such was the fact.

The last Iowa case referred to is *Mitchell* v. *Sawyer*, 21 Iowa 582. The syllabus of the case is: "When a wife has separate property, she may use it, in trading for real or personal property, without subjecting the profits to seizure for the payment of the husband's debts." The part of the opinion on which the appellant's counsel specially rely is this: "The facts upon which the plaintiffs' argument is based are not inconsistent with honesty of intention on the part of the defendants. This being true, fraud ought not to be imputed. *Stiles* v. *Lightfoot*, 26 Ala. 443. Then, again, the allegations of the bill being denied generally and specifically, the burden of proof is on the plaintiffs; and, unless the testimony overcomes these denials, the bill was properly dismissed." For this proposition certain Iowa cases are referred to by the court. Now, the law as thus stated is, it seems to me, right. The case is so briefly and imperfectly stated that it is impossible to say whether it was properly decided on the facts or not; though, from what is said about the facts of the case, I strongly suspect that our Court would have decided it differnetly. But the case throws no light on the question whether the recitals of valuable consideration in a deed is not evidence against the creditors of the grantor assailing the deed as voluntary. No such question seems to have been involved in the case.

This question can in fact be hardly regarded as an open question in this State; for in *Knight* v. *Capito*, 23 W. Va., Syl. 3, p. 639, this Court held: "Where a creditor files a

bill to set aside, as fraudulent, a deed executed by his debtor, which recites the payment of valuable consideration, and such creditor's debt is older than the deed, the burden is on the grantor to prove the payment of the purchase-money, or, if the deed was executed in payment of existing debts, to prove the existence and validity of such debts." And on page 652 these authorities are referred to as sustaining this proposition: *Hamilton's Adm'r* v. *Blackwell,* 60 Ala. 545; *Marriott* v. *Givens,* 8 Ala. 694; *Streeper* v. *Echart,* 2 Whart. 302; Bump Fraud. Conv. 55.

My conclusion, therefore, is that the deed dated July 2, 1884, executed by J. W. Verlander to Mary A. Rock, conveying the three acre lot in West Huntington was a voluntary deed, as there was no proof that any purchase-money was ever paid, and no proof whatever of the existence and validity of any of the debts due from the grantor to the grantee, for the satisfaction of which the deed recites that it was executed; nor any proof tending in any degree to prove that any valuable consideration was paid by the grantee, Mary A. Rock, to the grantor as the consideration for this conveyance; nor any proof tending to show that it was made in satisfaction of a previous indebtedness of the grantor to her, nor, indeed, that he was indebted to her to any extent prior to the execution of this deed.

Did the fact that this deed was voluntary render it fraudulent and void necessarily as to. pre-existing creditors of Mary A. Rock; and did the fact that there were such previously existing creditors,—their debts in this case amounting to nearly $5,000.00,—render this voluntary deed, either *prima facie* or conclusively, fraudulent and void as to them? If it was not even *prima facie* fraudulent as to them, what is the extent and character of the proof required of them to make such voluntary deed fraudulent and void as to them? A statute was passed in the twenty seventh year of Elizaabeth, which has always been in force in Virginia and West Virginia and is the first section now of chapter 74, Code W. Va. 1887, p. 631. It provides that "every gift, conveyance, assignment, transfer, or charge upon any estate, real or personal, every suit commenced, or decree, judgment, or execution suffered or obtained, and every bond or other writing

given, with intent to delay, hinder, or defraud creditors, purchasers, or other persons, of or from what they are or may be lawfully entitled to, shall, as to such creditors, purchasers, or other persons, their representatives or assignees, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

The earlier decisions held that a voluntary conveyance is always to be deemed fraudulent as to existing debts; but a voluntary conveyance was not on that account merely deemed fraudulent as to subsequent creditors. This *prima facie* presumption in favor of the fairness and validity of a voluntary conveyance, as against subsequent creditors, was very weak and was repelled in the first instance by the simple proof, that the grantor was when he made the voluntary conveyance, indebted to any extent however small. The burden of proving the fairness and validity of a voluntary conveyance as against subsequent creditors being thus imposed upon the grantee by the simple proof that the grantor was indebted to any extent, when he made such voluntary conveyance, this burden could not be met by the grantee proving that all the pre-existing debts of the grantor were amply secured by being charged on land or other property; or that after the payment of all his pre-existing debts secured, and after the making of the .voluntary conveyance, there was left in his hands an ample remnant of estate to satisfy all his pre-existing debts not so secured; and that there was, when such voluntary conveyance was executed, no reason to believe that this ample remnant of estate kept in the hands of the grantor would not be applied to the payment of all his pre-existing debts; and that no appreciable risk of loss to pre-existing creditors was put on them by the execution by the grantor of such voluntary deed. These views, after careful examination, were approved and sustained by Chancellor Kent in the case of *Reade* v. *Livingston*, 3 Johns. Ch. 500; and they seem to have been at an early period approved in Virginia. See *Chamberlayne* v. *Temple*, 2 Rand. (Va.) 384, 399.

But the Virginia courts afterwards placed existing and

subsequent creditors in the same category; holding that when a voluntary deed was made, and there were any pre-existing debts of the grantor, the voluntary deed ought not to be held as conclusively fraudulent and void as to pre-existing creditors, but only as *prima facie* fraudulent, both as to pre-existing creditors and as to subsequent creditors; but that such *prima facie* case could be repelled by such proof as I have before indicated as necessary to repel the presumption, that a voluntary deed was fraudulent and void as to subsequent creditors, which arose from the simple fact, that it was proven that the grantor was to some extent, however trifling, indebted when he made the voluntary deed. These views, however, of the more recent Virginia decisions met with prolonged, and we may say bitter, opposition from some of the ablest judges in Virginia. I do not deem it necessary to cite the numerous cases on this subject decided in Virginia, or cases arising prior to 1850, or the various decisions, relied upon by them, decided by courts elsewhere, on which they based their decisions, as this whole subject of controversy was to a great extent settled by an amendment of the statute-law in the Code of West Virginia of 1850, which statute-law has always been in force in West Virginia. Those who wish to see the character of this controversy can do so by reading the case of *Lockhard* v. *Beckley*, 10 W. Va. 87, and the numerous cases there cited. This addition to our statute-law in the Code of 1850 was doubtless inserted for the express purpose of settling these controversies. It is now the second section of chapter 74, Code W. Va., p. 632, and is as follows:

"Every gift, conveyance, assignment, transfer, or charge which is not, upon consideration, deemed valuable in law, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not on that account merely be void as to creditors whose debts shall have been contracted, or as to purchasers who shall have purchased after it was made; and though it be decreed to be void as to prior creditors, because voluntary, it shall not for that cause be decreed to be void as to subsequent creditors or purchasers."

It is obvious that this statute, in the main, adopted as law

the view laid down in the old decisions and by Chancellor Kent in *Reade* v. *Livingston*, 3 Johns. Ch. 500, in all cases where the voluntary deed was executed subsequent to July 1, 1850, when this statute took effect. It is obvious that thereafter every voluntary deed was absolutely void as to the creditors of the grantor, whose debts were contracted prior to the execution of such voluntary deed, whether the grantor actually intended by such voluntary deed to hinder, delay, or defraud them or not. It is also, I think, equally obvious that such voluntary deed was not, as to subsequent creditors of the grantor, even *prima facie* fraudulent and void, simply because it was proven, that he was to some extent indebted at the time he executed such voluntary conveyance. In this respect the law as laid down by Chancellor Kent in the above case was modified; and, in order that such voluntary deed should be void as to subsequent creditors, it became necessary for the subsequent creditors to prove that all the pre-existing debts of the grantors were not amply secured by being charged on land or other property, or that after payment of all his preceding debts secured, and after making of such voluntary conveyance, there was not left in his hands an ample amount of estate to satisfy all his preceding debts not so secured; or that there was, when such voluntary conveyance was executed, reason to believe that this ample remnant of his estate kept in the hands of the grantor would not be applied to the payment of all his preceding debts; or that an appreciable risk was, by the execution of such voluntary deed, put on his existing creditors. The old law required the grantee to prove the reverse of this, but under this statute the burden of proving this is put upon the subsequent creditors. But, if this be proven, the law imputes to the grantor, in executing such voluntary deed, the actual fraudulent purpose of hindering, delaying, and defrauding his previously existing creditors. If such actual fraudulent purpose of defrauding his pre-existing creditors is proven in this or in any other manner, it renders the deed null and void, not only as to them, but also as to subsequent creditors. Of course, if an actual fraudulent purpose to defraud subsequent creditors only by the execution of such voluntary conveyance is proven, though pre-existing cred-

itors were not thereby defrauded, such deed would be void
as to the subsequent creditors.   These views as to the true
meaning and effect of this second section of chapter 74 of
our Code were laid down and decided by our Court in *Lock-
hard* v. *Beckley*, 10 W. Va. 87, as will abundantly appear
from some of the points set out in the syllabus of this case.
These points were:

"(4) A voluntary conveyance which interferes with or
breaks in upon the rights of existing creditors will not be
permitted to take effect to the prejudice of their just de-
mands, but, as to such creditors, is absolutely void, with re-
gard to the amount of the debts, the extent of the property
so conveyed, the motives which prompted the settlement, or
the conditions or circumstances of the party at the time.
(5) The second section of chapter 74, Code W. Va., makes a
clear distinction between the rights of existing and subse-
quent creditors, as to a voluntary conveyance, and such a
conveyance can not be impeached by subsequent creditors
on the mere ground of its being voluntary, and the party
making it, or at whose instance it was made, being indebted
to some extent, if there be no actual fraudulent view or
intent in the party at the time.   (6) But if it be shown
that there was *mala fides* or fraud in fact in the transac-
tion, whether the actual fraudulent intent relates to ex-
isting creditors, or is directed exclusively against sub-
sequent creditors, the effect is precisely the same, and
subsequent creditors may, upon the strength of such fraud,
successfully impeach the conveyance.   (7) While it is true,
under the second section of chapter 74 of the Code of West
Virginia, a voluntary conveyance, as to subsequent cred-
tors, is not void merely on the ground that it was voluntary,
and the party indebted at the time it was made, yet upon
the question whether it is fraudulent in fact, it is proper to
consider the circumstances of its being voluntary, and the
party indebted at the time; and, if additional circumstances
connected with these two be sufficient to show fraud in fact,
it is void as to subsequent creditors.   (8) Although fraud in
fact must be shown to impeach a conveyance as to subse-
quent creditors, it is not required that the actual or express
fraudulent intent appear by direct and positive proof; cir-

cumstantial evidence is not only sufficient, but in most cases is the only evidence that can be adduced. (9) Fraud is to be legally inferred from the facts and circumstances of the case when these facts and circumstances are of such a character as to lead a reasonable man to the conclusion that the conveyance was made with intent to hinder, delay, or defraud existing or future creditors."

These principles, thus clearly laid down, have since been frequently approved and acted upon by this Court, in whole or in part.

It is obvious, from what we have said, that if upon a particular creditor, who assails a deed, the law imposes the necessity of alleging that a certain deed, whether voluntary or not, was executed by the grantor to the grantee with a fraudulent intent, as our law does on every subsequent creditor, the burden of proving such fraudulent intent as against the grantee must necessarily be upon such creditor, as we have in effect decided in the case of *Lockhard* v. *Beckley*, 10 W. Va. 87; for, in the absence of all evidence, the court will not presume that the parties to such deed had been guilty of a gross moral impropriety. But, as we have seen, the allegation that a deed is voluntary, and was executed without any valuable consideration, when made by a creditor of the grantor, imposes on him no burden of proving that it was executed without any valuable consideration proceeding from the grantee; but the burden is on the grantee to prove that he gave some valuable consideration, and the recitals in the deed to that effect are no evidence against such creditors.

The law in imposing on the grantee the burden of proving, as against a stranger, that he paid some valuable consideration, does not have to presume, as in the other case, that he or his grantor have been guilty of any moral impropriety; for the mere giving away of his real estate by a voluntary conveyance is not, in many cases, in any way illegal or improper morally. On the contrary it is often highly meritorious. If the deed was one taking effect under the statute of uses, such as a bargain and sale, it would, in order to convey the legal title, have to recite a valuable consideration; but such a recital would be a mere matter of form.

And in this State, as under our statute of grants real estate may be conveyed by grant, and as a grant never did require a consideration to make it effective as a conveyance, it is no longer necessary, in order to pass the legal title, to even recite that a valuable consideration has been paid. And even if such deed was drawn up in the usual form of a deed of bargain and sale, though no consideration was mentioned, it would doubtless be held to pass the legal title as a grant. See 2 Min. Inst. 703. There is obviously, therefore, good reason when a suit is brought by a subsequent creditor to set aside as voluntary and fraudulent a conveyance, for imposing on the grantee the burden of proving that he paid a valuable consideration to the grantor, and imposing on the creditor the burden of proving that the deed was made with a fraudulent purpose by the parties to it.

I will now apply the law, as I have laid it down, to the facts in this case. These facts are that on the 2d day of July, 1884, J. W. Verlander executed to Mary A. Rock a voluntary deed, whereby he conveyed to her a lot in West Huntington containing three acres with the building thereon. No proof was taken as to the value of these three acres of ground; but in her answer Mary A. Rock says that, when this deed was executed to her, J. W. Verlander, who she says, was then solvent, owed her $14,698.16, which was a full consideration for the land, and she accepted the deed in full satisfaction of the debt. The value of this three acres of land must be considered as $14,698.16. All of his other real estate is estimated by the commissioner to be worth $5,450.00, and so he reports to the court, and no exception was taken to his report in this respect. The commissioner reports also, that there was no evidence before him to show that he then, when this voluntary deed was executed, owned any personal property. We may therefore assume that he then owned no personal property, especially as the exhibits filed with the bill prove that a number of executions were subsequently issued against him, which were returned, either "Not satisfied," or "No property found." The first of these executions issued on June 16, 1885, or within less than a year after this voluntary deed to Mary A. Rock was executed, and the last one on May 21, 1886. In the absence of all proof to the contrary we

must infer, that he had no personal property, when this voluntary deed was executed.

The total value of all his real estate then was estimated to be $19,548.16; and he gave away by a voluntary conveyance to Mary A. Rock nearly three fourths in value of his property. Did he retain an ample amount of this real estate to satisfy all his existing creditors, so that he did not by the execution of this voluntary deed put on them any appreciable risk of losing any portion of their debts? If he did not, as we have stated, the law would impute to him, when he executed this voluntary deed to Mary A. Rock, the purpose of hindering, delaying and defrauding his existing creditors. The commissioner's report, unexcepted to, taken in connection with the exhibit filed with the bill, proves that on the 2d of July, 1884, when he executed this voluntary conveyance, he owed to Staunton & Balmert $3,090.67, to L. G. Buffington $1,122.55, and to Thomas Rutter & Co. $600.00. The first of these debts was secured by a deed of trust on a part of his real estate, worth $3,000.00,—the property being estimated by the commissioner as worth less than the debt secured upon it; and the second of these debts was secured on the same property, as also on another parcel of his real estate, estimated by the commissioner to be worth $450. So that these two debts, amounting to $4,213.42, were secured on real estate estimated to be worth only $3,450.00, or $763.42 less than the debts secured thereon. The last debt of $600.00 was entirely unsecured. These pre-existing debts amounted to $4,813.22 as of July 2d, 1884, when this voluntary deed was executed. The property of J. W. Verlander was, all taken together, estimated to be worth $5,450.00. This estimate, however, included the value of the contingent right of dower of his wife in $2,000.00 worth of this property; so that the estimated value of the property of J. W. Verlander, after he had given away more than $14,000.00 in value of his real estate, which he kept in his hands wherewith to pay his existing debts, was only about 10 per cent. more than the then amount of his debts. And as the larger of these debts was not due, as the deed of trust securing it shows, for more than 18 months after the execution of this voluntary deed, before this debt could have been

enforced by the sale of the land on which it was secured, it would by the interest accruing on it have increased in amount some $375.00; so that all the real estate retained by J. W. Verlander, had it sold at its estimated value as soon as it could be sold, would not have exceeded the amount of his then existing debts more than 5 per cent.

This, certainly, can not be regarded as an ample remnant to retain in his hands to pay his existing debts. And the giving away nearly three-fourths in value of his real estate by this voluntary conveyance certainly put on existing creditors a very appreciable risk of losing a portion of their debts; for it very generally happens that when real estate is sold at auction it brings much more than 5 per cent. less than its estimated value. The commissioner's report, unexcepted to in this respect, taken in connection with the exhibits filed with the bill, shows that between the time this voluntary deed was executed and the 3d day of January, 1887, judgments had been recovered against Verlander by 16 different parties, amounting, when the report was made, to $3,136.80, on which he had paid $748.41, though he had increased his indebtedness by borrowing from the bank of Huntington to the extent of $584.00. The bill alleges that the debts on which some $2,500.00 of these judgments were rendered were increased before the making of this voluntary conveyance; but, as there is no proof when these debts were increased, we will regard them as all debts made subsequent to the execution of this voluntary deed. And as the facts are entirely unexplained that he incurred, after the execution of this voluntary deed, debts exceeding $3,000.00, upon nearly all of which, though reduced to judgments, he never paid one cent; and that his payments on the two upon which he did make payments reduced his debts less than $200.00, as he incurred an additional debt in bank, amounting to within less than $200.00 of the amount paid; these facts would seem to me to justify the conclusion reached by the Circuit Court, that by this voluntary gift of more than two thirds of the value of all his property he actually intended not only to delay, hinder and defraud his existing creditors, but also to actually defraud his future creditors.

The decree of the Circuit Court of March 30th, 1887, should

be affirmed, I think. But while we all agree that the rule is almost universal, that a court can be called upon only to decide causes, as the parties present them, and can not be expected to formulate and direct the manner in which they should be presented, still, when from the cause as presented by the parties it is apparent to the court, that the subject of the suit can not be decided without great risk of doing injustice and wrong because of such defects, which can certainly be corrected, and especially when these defects have resulted, because it was a very nice and difficult question to determine, whose duty it was to correct such defects, it is the duty of the court to require these defects to be removed before hearing and deciding the case on its merits. This the court below did not do, but in this cause acted upon and decided the case when it was in so imperfect a condition as to render it entirely uncertain, whether the conclusion on such imperfect record would or would not be the same, as would be reached, if those obvious defects in the cause as presented were corrected, as they could readily be.

The other members of the Court are of opinion, that in this case, the cause coming on to be heard on a record thus defective, the court ought not to have heard it then, till further opportunity was given both parties to correct these obvious defects, which the record showed they could do; and following some precedents (see *Atkinson* v. *Sutton,* 23 W. Va. 472), which have been set by appellate courts in a few extreme cases, they have reached the conclusion, that the decree below is erroneous, simply because no decree should then have been entered on so defective a record; but the appellant should pay to the appellee his costs in this court expended; and, instead of entering a decree on so imperfect a record, this cause should be remanded to the Circuit Court of Cabell county, to afford parties an opportunity to correct these obvious defects, and to be proceeded with upon the principles laid down in this opinion, and further according to the principles governing the courts of equity,

REMANDED,