# CHARLESTON.

SPENCE *v*. SMITH.

(HOLT, JUDGE, absent.)

Submitted September 8, 1890.—Decided February 7, 1891.

1. FRAUDULENT CONVEYANCES—BURDEN OF PROOF—KNOWLEDGE OF GRANTEE.

A father, who is largely indebted, conveys all of his property, consisting of a tract of land containing seventy nine acres, to his son, for the expressed consideration of twelve hundred dollars, and on the same day, and for the same consideration, said son conveys said tract of land to his mother. A creditor, whose debts are older than said deeds, files a bill impeaching said conveyances as voluntary and fraudulent. The burden of proof is on the son and wife of the debtor to prove the payment of the purchase-money.

2. FRAUDULENT CONVEYANCES—BURDEN OF PROOF—KNOWLEDGE OF GRANTEE.

Where the debt due the plaintiff who files a bill impeaching such conveyances is evidenced by two notes, which were in the hands of an attorney, who had been frequently urged to collect the same, but failed to take any steps to effect that object, and who finally, by the direction of said creditor, turned said notes over to a constable, who, he was advised, had directions to sue promptly thereon, and said attorney, between the date on which suit was brought on said notes and the return-day of the summons, took a·deed from said· debtor and his wife for said seventy nine acres of land, and claims that half of the consideration was paid by a debt due him from said debtor, the burden of proof devolves on said attorney to show the existence and validity of the debt claimed to be due him.

3. FRAUDULENT CONVEYANCES—BURDEN OF PROOF—KNOWLEDGE OF GRANTEE.

A purchaser from a fraudulent grantee, with notice of the invalidity of his title, can acquire no better right than that held by said grantor.

*C. L. Brown* and *C. L. Matheny* for appellant, cited 23 W. Va. 639; 30 W. Va. 619, 646, 647.

*Hutchinson & Johnson* for appellees, cited 10 W. Va.

88

88; 17 W. Va. 717; Code, c. 74, s. 2; 25 W. Va. 24, p't 1, Syll.; Waite, Tr. Con. § 158; 3 Md. ch'y 35; 17 W. Va. 764, p't 7, Syll.; Hutch. Treat, § 887; 14 Johns. 493, 498.

ENGLISH, JUDGE:

This was a suit in equity, brought by L. Spence against Barnes B. Smith and others in the Circuit Court of Wood county, the object of which was to subject to sale the real estate of said B. B. Smith, which was alleged to consist of seventy nine acres and a fraction, situated in said county, and to set aside and annul certain deeds of conveyance made by said B. B. Smith and wife to their son, J. A. Smith, Jr., and from said J. A. Smith, Jr., to Sallie Smith, the wife of said B. B. Smith, and from said B. B. Smith and Sallie Smith, his wife, to Dixon R. King.

The material allegations relied on by the plaintiff in his bill on which he bases his claim for relief are as follows: On the 15th day of May, 1879, B. B. Smith, J. A. Smith, and Charles Lucas executed two notes to him or his order— one for one hundred fifty eight dollars and thirty four cents, due on or before November 1, 1880; and the other for one hundred fifty eight dollars and thirty three cents, due on or before November 1, 1881, both bearing interest from date at six per cent.—which notes were indorsed by one Jacob Wigal. That payments had been made on said notes at different times, aggregating one hundred ten dollars and fifty cents, which had been credited on said last-named note. That plaintiff sent said notes to the defendant Dixon R. King for collection, who was a practicing attorney in the counties of Wood and Jackson, and who had long known and advised the said Barnes B. Smith in his business dealings. Said King failed and neglected to collect said notes, and would not take a judgment thereon, although directed so to do by the plaintiff. Some time in 1887 plaintiff wrote to said King, and directed him to turn said notes over to one H. H. Pennybacker, a constable of said county, for collection, but in this the said King also failed; and the plaintiff threatened to sue him if he did not comply forthwith with his request, and shortly

thereafter the plaintiff received a letter from said Barnes B. Smith, asking for more time, and promising that if ninety days were given he would pay off said notes, which letter was filed with plaintiff's deposition in the cause. On the 10th day of August, 1887, suit was brought on said notes before a justice of said county against said Barnes B. Smith, J. A. Smith, and Jacob Wigal, and the summons was served on the 15th day of August, 1887; and on the 27th day of August, 1887, judgment was rendered by said justice against said Barnes B. Smith, J. A. Smith, and Jacob Wigal for three hundred ten dollars and ninety cents and three dollars and seventy five cents costs. Although execution was issued on said judgment, nothing was realized except about fifty dollars by the sale of a mare. Said Charles Lucas died insolvent. The said James A. Smith was the owner of no real estate except the said tract of 79.44 acres; and that plaintiff's said judgment constituted a valid lien upon all of the real estate of the said J. A. Smith, Barnes B. Smith and Jacob Wigal; and he had the right to enforce the same in equity. Plaintiff caused his said judgment to be docketed, and that there were no other liens against said land except the plaintiff's judgment. On the records of said county he found a deed recorded from said Barnes B. Smith and Sallie, his wife, to James A. Smith, Jr., dated October 5, 1885, and also another deed dated October 9, 1885, from said James A. Smith to Sallie Smith, for said 79.44 acres of land, in both of which deeds the consideration expressed was one thousand and two hundred dollars, cash in hand paid. Both of said deeds were acknowledged on the 28th day of October, 1885, and were admitted to record on the 29th of the same month, and that they were executed at one and the same time, and for the same fraudulent purpose. Neither said J. A. Smith nor the said Sallie Smith ever had one thousand two hundred dollars, and no such sum of money, or any other, was ever paid. Said J. A. Smith was the son of said Barnes B. Smith and Sallie Smith. Within ninety days after said notes had been turned over to Pennybacker by said King for collection, and after plaintiff had commenced suit against said Barnes B. Smith, J. A. Smith, and Jacob

Wigal, their surety, to wit, in August, 1887, the said Barnes B. Smith, Sallie Smith, and Dixon R. King, all of whom knew of plaintiff's said claim and suit thereon, attempted by collusion to wrong, cheat, and defraud the plaintiff out of his said claim, and for that purpose, on the 23d day of August, 1887, three days after the rendition of the plaintiff's judgment, another deed was executed by said Barnes B. Smith and Sallie Smith to said Dixon R. King, which bears date on the 1st day of August, 1887, and was acknowledged on the 17th day of August, 1887. That was between the time of the service of said summons and the date of the rendition of the said judgment in favor of the plaintiff. The consideration mentioned in said deed was one thousand and twenty one dollars, of which three hundred twenty nine dollars and forty cents was acknowledged to have been paid in hand, and the residue was to be paid as follows, to wit, one note in favor of W. A. Cooper for three hundred and twenty dollars, dated July 23, 1884, and the residue on the 20th day of August, the day on which said judgment was taken against said Smiths, and on which said summons was returnable; and on the face of said deed it appears that three hundred dollars, a part of said consideration, is described as "the three hundred dollar note to Barnes B. Smith, to secure which a vendor's lien is reserved." There has been no change of possession of said land, but that the said Barnes B. Smith has always remained in the actual use and occupation thereof; and he alleged that said deeds made to J. A. Smith, to Sallie Smith, and to Dixon R. King were fraudulent as against the plaintiff, and that they were all made with intent to hinder, delay, and defraud the creditors of said Barnes B. Smith, and especially the plaintiff, in the collection of his claim; and he prayed that said deeds might be set aside, and said land be sold, and that his claim might be satisfied from the proceeds thereof.

The defendant's Dixon R. King and Barnes B. Smith filed their separate answers to plaintiff's bill, thereby putting in issue every material allegation therein contained. Several depositions were taken in the cause, and on the 16th day of July, 1889, a final decree was rendered therein,

in which the court held that the plaintiff's judgment against Barnes B. Smith, J. A. Smith, and Jacob Wigal was a valid judgment against them, in full force and binding for the amount due thereon, but that it was not shown that the defendaut Dixon R. King committed any fraud in purchasing said 79.44 acres of land and obtaining a deed therefor from Barnes B. Smith and Sallie, his wife, bearing date August 1, 1887; and further, that it was not shown that said King had notice of the plaintiff's judgment against said Barnes B. Smith and others when he obtained said deed, and that said deed was not fraudulent and void as against the plaintiffs, and that said tract of land in the hands of said King was not liable to the plaintiff's said judgment, and that the plaintiff was not entitled to the relief prayed for against said tract of land. From this decree the plaintiff applied for and obtained this appeal.

The defendants, King and Barnes B. Smith, appear to have been contented with a denial of the allegations of the plaintiff's bill, as they took no depositions in the cause, which course would indicate that they regarded the burden of proof as resting entirely upon the plaintiff; and for some reason the defendants James A. Smith and Sallie Smith failed to answer the plaintiff's bill, or plead to it in any manner, and, as to the allegations therein contained, it stands confessed as to them, and, so far as they are concerned, it is admitted that said land was conveyed to J. A. Smith and from him to Sallie Smith without consideration, and with intent to hinder, delay, and defraud the plaintiff.

It is alleged in the plaintiff's bill that the defendant King was an attorney at law, practicing in the counties of Wood and Jackson, and this allegation is not denied by said King in his answer. He admits that said notes came into his hands, but claims they were placed in his hands as trustee, when he, as such trustee, was about to make sale under a deed of trust, which was executed by Lucas to secure said notes. Be this as it may, the plaintiff, in his deposition, swears that he had to send I. N. Ferguson, his agent, twice to said King, with the instructions if he did not turn them over he would sue him for the amount of the notes; and he thinks said Ferguson had to make a third

trip before the notes were turned over to Pennybacker. It is evident, then, that the defendant King was not ignorant of the object the plaintiff had in view in having said notes turned over to Pennybacker; and it is also apparent that Barnes B. Smith and Jacob Wigal, in May, 1887, had become aware that said notes had been turned over to Pennybacker, from the letter signed by said Smith and Wigal, which is filed with the plaintiff's deposition, in which they say to him: "As you have put them notes in the hands of Pennybacker for collection, and now I wish you to hold off till after harvest, if you please, and then you shall have your money. Mr. Spence, if you go ahead with it, it will hurt me very much; and if you will wait ninety days I can pay you without any trouble, and you can have your money then sure; and I do wish you to give me a little time, as you have been so good to me. Mr. Spence, if there is any way possible for you to wait on us, please give us a show, and we will never forget you. Let me hear what you will do soon"—and then the following postcript was added: "Mr. Spence, if you will please give me time, let H. H. Pennybacker know, and oblige"—and then, in pursuance of this request, as appears by an exhibit filed with the plaintiff's deposition, the plaintiff on the 31st day of May, 1887, wrote to said H. H. Pennybacker as follows: "Mr. B. B. Smith wrote to me this morning that if we crowded him for that claim right now that it would damage him very much, and if we will wait on him ninety days he will pay it all off; so you will please take judgment on the claim, and see Mr. Wigal, and if he is satisfied to let it stand ninety days, to accommodate Mr. Smith, I am satisfied to do so. I don't want to do B. B. Smith any harm if I can help it." The witness H. H. Pennybacker, in answer to question 14, says: "I do not remember the exact time I received these notes, but these are the notes that were delivered to me by Dixon R. King, by order of Mr. L. Spence, for collection, just prior to the bringing this suit." He also states that he served the summons in the suit brought upon said notes on the 15th day of August, 1887; and W. Wells, the justice, states that it was returnable to the 20th day of August, 1887, and that there was no appearance on that day. The

deed from Barnes B. Smith and Sallie Smith to the defendant Dixon R. King was acknowledged on the 17th day of August, 1887, and admitted to record on the 23d day of the same month.

Now, Dixon R. King was fully aware that the plaintiff had been urging the collection of these notes while they were in his hands, and that they were turned over to Pennybacker, who had instructions from the plaintiff to take judgment upon them. The summons had been served on Barnes B. Smith on the 15th day of August. On the 17th day of August said Barnes B. Smith and wife acknowledged the deed to Dixon R. King for said tract of land.

On the 22d day of August an execution was issued on said judgment, and on the 23d of the same month said Barnes B. Smith returned and filed an exemption list of his personal property, amounting to thirty four dollars and seventy five cents; and on the same day said deed to Dixon R. King was admitted to record in the clerk's office of the County Court, of Wood county; and it may be regarded as somewhat singular that the payment of the consideration for said land is provided for as follows: One note in favor of W. A. Cooper, calling for three hundred and thirty dollars, dated the 23d day of July, 1884; three hundred twenty nine dollars and forty cents cash, and three hundred dollars to be paid on or before the 20th day of August, 1887, the day on which said summons was made returnable. It appears on the face of said deed to Dixon R. King that said deferred payment of three hundred dollars was evidenced by a note payable to Barnes B. Smith, and secured by a vendor's lien; and on the 17th, the day said deed was acknowledged, said B. B. Smith acknowledges the receipt of three hundred twenty nine dollars and forty cents cash; and yet, on the 23d day of August, when he made out and swore to his exemption list, he stated that all of his personal property owned or claimed by him, including bonds, bills, notes, claims, and demands, consisted of one wagon, fifteen bushels of wheat, five head of hogs, two small hogs, one plow, one small shovel plow, and three colonies of bees, of the aggregate value of thirty four dollars and seventy five cents.

Another circumstance is detailed in the deposition of Jacob Wigal. In answer to question fifty nine he says: "I went to Dixon R. King, and asked him if that land was cleared, and he told me it was; and I said to him, 'Can't I make my money out of that land if they go back?' and he said, 'Certainly you can.' That is just what he told me at that time." This conversation occurred from the middle to the last of July, so it appears in more ways than one that the defendant King had full knowledde not only of the existence of the plaintiff's debt, but of the efforts he was making to recover it at and before the time the said conveyance was made to him; and the conversation said King had with Wigal clearly indicates that he was acquainted with the pecuniary circumstances of said B. B. and J. A. Smith, and with the fact that said tract of land was all that Wigal or any other creditor could expect to realize a debt of the magnitude of plaintiff's from. It is true that the defendant King in his answer, claimed that said Barnes B. Smith and wife were indebted to him and W. A. Cooper in an amount, together, equal to half of the value of the land; and that he bought the land without knowledge of any taint of fraud on the part of the Smiths, partly for the purpose of securing his own debt and partly for the purpose of securing the Cooper debt—he having assumed the payment of the Cooper debt, and said Cooper having agreed to give him a reasonable time to pay the same. This answer, however, was replied to generally, and said King neither took his own deposition nor that of any other person in support of said allegation. The deposition of Wigal shows clearly that King was cognizant of the fact that James A. Smith was insolvent, and had no such sum as one thousand two hundred dollars with which to purchase said tract of land; and neither said James A. Smith nor Sallie Smith have in any manner claimed or attempted to show any abilty on their part to purchase said tract of land.

Again, the notes on which said judgment was obtained are dated on the 15th day of May, 1879, and matured, respectively, on the 1st days of November, 1880, and 1881, while the deed from Barnes B. Smith and wife to James A. Smith bears date on the 5th day of October, 1885, and the

deed from James A. Smith and wife to Sallie Smith, his mother, bears date October 9, 1885 ; and both of said deeds were acknowledged on the same day and admitted to record at the same time. In the case of *Knight* v. *Capito*, 23 W. Va. 639, this Court held that, "if a conveyance be made by a father to his son in consideration of old debts alleged to be due from the father to the son, and the same is impeached by his creditors as having been made with intent to hinder, delay, and defraud them in the collection of their debts, the son will be held to stricter proof of his honesty in dealing with his father than a stranger would be." Also, that "where a creditor files a bill to set aside as fraudulent a deed executed by his debtor, which recites the payment of a valuable consideration, and such creditors' debts are older than the deed, the burden is on the grantee to prove the payment of the purchase-money; or, if the deed was executed in payment of existing debts, to prove the existence and validity of such debts."

Applying this ruling to the facts developed in this case, the burden of proof surely devolved upon James A. Smith and Sallie Smith to prove the payment of the purchase-money to Barnes B. Smith for said tract of land; yet they not only fail to prove the payment of any portion of said purchase-money, but allow the allegations of the bill, "that neither the said James A. Smith nor the said Sallie Smith ever had any one thousand two hundred dollars, and that no such sum of money or any other was paid at all," to remain uncontradicted, so far as they were concerned. We must, then, regard these conveyances to James A. Smith and Sallie Smith as voluntary; and in the case of *Custard* v. *Bowles*, 24 W. Va. 730, this Court held that "a court of equity will declare a voluntary conveyance fraudulent as to subsequent creditors if, from the circumstances and other evidence, the court is convinced the deed was made with the intent to defraud such creditors. The conveyance being voluntary, it is immaterial whether or not the grantee had notice of such fraud." And when we apply the law as stated in *Knight* v. *Capito*, *supra*, to the facts stated by Dixon R. King in his answer, the burden of proof must rest upon him to show the payment of the purchase-money.

The plaintiff's debt was older than his deed from Barnes B. Smith and wife; and, although he claims that a considerable portion of the purchase-money was absorbed in the payment of existing debts due him, yet this Court held, in *Knight* v. *Capito, supra,* that under such a state of facts it was incumbent on said King to prove the existence and validity of such debts; and this he has utterly failed to do. We can arrive at no other conclusion than that the deed from Barnes B. Smith and wife to James A. Smith was made without consideration, and is void as to the creditors of said Barnes B. Smith, although good as between the parties thereto; and the same may be said with reference to the deed from James A. Smith and wife to Sallie Smith; and B. B. Smith, having conveyed the title to J. A. Smith, which conveyance was good against him, no longer had any title to convey at the time he and Sallie Smith made said deed to Dixon R. King, but, as she was living with her husband, it was necessary that he should join with her in making said conveyance. The title, however, which said Sallie Smith derived from James A. Smith was void as to existing creditors; the allegation in the bill that the deeds to James A. Smith and Sallie Smith were made without consideration deemed valuable in law being undenied by either of them, and no consideration having been shown by the evidence in the cause. See Warth's Code, 1887, p. 632, s. 2. King could acquire no better title from her than she had, if he had notice of the fraud. See *Goshorn's Ex'r* v. *Snodgrass,* 17 W. Va. 717, where it is held that "one who purchases from a fraudulent grantee, with notice of the fraud and of the invalidity of his title, can acquire no better right than the fraudulent grantee has. He can not be protected as a *bona fide* purchaser, but must stand in the shoes of his grantor;" and in the same case it is held that, "if the facts established afford a sufficient and reasonable ground for drawing the inference of fraud, the conclusion to which the proof tends must, in the absence of explanation or contradiction, be adopted."

At the time said tract of land was conveyed to Dixon R. King, Barnes B. Smith was in possession of it, although the deeds to J. A. Smith and Sallie Smith had been recorded

nearly two years before. Yet he dealt directly with Barnes B. Smith, and made the note for the residue of the purchase-money payable to him; and, if the statement made by Dixon R. King in his answer, that "said Barnes B. Smith and wife were indebted to him and W. A. Cooper in an amount, together, equal to half the value of said land" at the time said conveyance was made to him be taken as true, although there is no evidence to support it, yet, when we apply the ruling of this Court in the fourth section of syllabus in the case of *Knight* v. *Capito*, which holds that "if an insolvent grantor justly indebted to one of his creditors in a comparatively small amount convey to him all of his property, or the greater portion thereof, in satisfaction of his debt for a nominal consideration, falsely recited in the deed, and claimed by the grantee to have been in hand paid, equal in value to that of the property conveyed, but largely in excess of the debt actually due such creditor, and he accepts the same, such deed, as to the other creditors of the grantor, will be held to be fraudulent and void, as the necessary effect of such deed is to hinder, delay, and defraud such other creditors; and the grantor and grantee in such deed will be held to have intended the necessary result of their wrongful act"—we can regard said conveyance to Dixon R. King in no other light than as fraudulent as to the plaintiff's debt.

In Bump on Fraudulent Conveyances, p. 84, we find the author says: "Taking an absolute deed as security for money is a mark of fraud, for it is calculated to deceive creditors, and make them believe that no part of the property is subject to their demands, when in fact it is otherwise." And the same author says, on page 90: "The retention of the possession of land, and the exercise of unequivocal acts of ownership over it, is a badge of fraud, for it is not in the usual course of business, and indicates a secret trust for the benefit of the debtor." And again, on page 104, the same author says: "The want of possession, however, is a strong badge of fraud. The property is placed in the purchaser, the possession continues in the debtor, and by that means creditors, perceiving no visible diminution of the debtor's effects, rest satisfied, and take no measure to

secure their debts, until perhaps the whole estate of the debtor is exhausted; whereas should the vendee immediately take possession, creditors would thereby have notice that the debtor's estate was wearing away, and apply for the discharge of their demands in time." And again, on page 154, he says: "The presumption is not merely a presumption of fraudulent intent on the part of the vendor, but also of a concurrence in that intent on the part of the vendee. The possession in the vendor, therefore, is all that need be shown in the first instance by the creditor contesting the validity of the transaction; and, that being shown, the statute presumes it to be fraudulent."

Although we have no such statute in this State, it was held in the case of *Western Mining & Manufacturing Co.* v. *Peytona Cannel Coal Co.*, 8 W. Va. 409, that "possession of land is evidence that the possessor has the right to the possession that he enjoys. Generally a person purchasing a tract of land is presumed to know who has possession of it, and to ascertain the character of the right by virtue of which he holds the possession, or, if the purchaser fails to do so, he is charged with notice of the character of the right, so far as this may be necessary to sustain the possession."

The defendant King, then, had notice that said land had been conveyed to J. A. Smith and to Sallie Smith, as their deeds had been recorded in October, 1885. He also knew that Barnes B. Smith still retained the possession, and that, of itself, was sufficient to put him upon inquiry. He also had notice of the plaintiff's claim, as plaintiff's agent had urged him to take judgment upon it; and the plaintiff swears that he urged him to do the best he could to get his money. Mr. Pennybacker swears that the notes were delivered to him by said King, by order of plaintiff, for collection, just prior to the institution of the suit; that the process was served on the 15th of August, 1887, and the deed from Barnes B. Smith and wife to said King was acknowledged on the 17th of the same month. And while said King claims in his answer that Barnes B. Smith owed him a considerable portion of the purchase-money, he offered no proof in support of the allegation; and, even, if

it had been shown by proper evidence, the transaction with Barnes B. Smith would be regarded as fraudulent as to existing creditors, under the ruling in *Knight* v. *Capito.* The deeds to James A. Smith and Sallie Smith, being voluntary, must be regarded as void as to the plaintiff's debt, under section 2 of chapter 74 of the Code; and the said King, having purchased from said Sallie Smith with notice of the fraud and the invalidity of her title, so far as the plaintiff's claim was concerned, acquired no better right than she had.

For these reasons the decree complained of must be reversed, and the cause remanded to the Circuit Court of Wood county for further proceedings to be had therein; and the appellees must pay the costs of this appeal.

REVERSED. REMANDED.