# CHARLESTON.

KNIGHT *v.* NEASE AND OTHERS.

Submitted January 26, 1903.    Decided April 4, 1903.

1.   STATUTE—*Bill—Evidence.*

Under our statute, an answer to a bill, is not evidence for the defendant, whether it be sworn to or not. Its only effect is to put the plaintiff on proof of the truth of the allegations in

his bill, denied by the answer.  Code, chapter 125, sections 38, 59.  (pp. 56-57).

2.  DEED—*Fraudulent Conveyance.*

Where a deed is assailed by a creditor of the grantor, on the ground that it was not upon consideration deemed valuable in law, the burden of proving that the deed was made for a valuable consideration rests on the grantee, or persons claiming the benefit of the deed.  (p. 61).

3.  FRAUDULENT CONVEYANCE.

It is not always necessary that direct affirmative or positive proof of fraud be given.  It may be, and usually is, proved by circumstantial or presumptive evidence.  If the evidence is sufficient to satisfy the mind and conscience of the existence of the fraud, it will be sufficient, although it does not lead to a conviction of absolute certainty.  The fraud need not be proved beyond a reasonable doubt.  *Ballard* v. *Chewning,* 49 W. Va. 508, 519.  (p. 62).

4.  FRAUD.

A cause in which fraud may be inferred from the facts and circumstances appearing therein.

Appeal from Circuit Court, Mason County.

Bill by James L. Knight against George M. Nease and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

JOHN E. BELLER, for appellants.

CHARLES E. HOGG, for appellee.

MILLER, JUDGE:

Appellants, Henry Lieving and George M. Nease, appeal from a decree of the circuit court of Mason County, made and entered on the 17th day of May, 1901, in the suit in equity, wherein appellee, James L. Knight, was plaintiff, and appellants and C. C. Sayre, were defendants.

Plaintiff filed his bill at the April rules, 1899, wherein he alleges: That on the 18th day of July, 1894, said Nease was the owner in fee of fifty acres of land, situate in the county aforesaid; that on the day and year last mentioned, said Nease and Sayre executed to plaintiff their note for five hundred dollars, payable twelve months after its date, with interest at eight per cent.; that on the 4th day of May, 1898, plaintiff recovered a

judgment in said circuit court upon said note, against Nease and
Sayre for $613.83, with interest thereon until paid, and $17.40
costs; that no part of the judgment has been paid, although exe-
cution had been issued thereon, and returned unsatisfied; that
after the execution of the note, but before the judgment thereon
as aforesaid, Nease transferred and conveyed said real estate to
Lieving "for the ostensible consideration as expressed in the
deed, of $800.00;" that at the time of the conveyance of the land
by Nease to Lieving, Nease was living upon the land with his
family; that it was his home place; that Lieving, was at that
time, and still is, the father-in-law of Nease; that while the
said deed purports to be for a valuable consideration as ex-
pressed on the face thereof, in truth and in fact, the said George
M. Nease made a voluntary conveyance of the said real estate
without any valuable consideration therefor, to the said Henry
Lieving as aforesaid, and that no money or other thing of value
passed between the said Lieving and the said Nease as a consid-
eration therefor, and it was a mere sham and a shift to have the
transaction to appear to have been founded upon a valuable con-
sideration so as to hinder, delay and defraud this plaintiff in
the collection of his said debt; that said canveyance was made by
Nease to Lieving, to hinder, delay and defraud the creditors of
Nease, and especially the plaintiff, and of this intention on the
part of Nease, Lieving had notice at the time of said conveyance,
and that he participated therein, and aided Nease in the alleged
fraud, by acepting said conveyance; that ever since said con-
veyance, Nease has resided on the land as if no conveyance there-
of had been made as aforesaid; and that Nease and Sayre are
insolvent. The bill, which is verified by affidavit, then pro-
pounds to defendant, Lieving, and to defendant, Nease, respec-
tively, six several special interrogatories, not necessary to be
here set out; and prays that said interrogatories may each be an-
swered; that said deed may be set aside as to plaintiff's said de-
mand; and for general relief.

The joint and separate answer of defendants, Nease and
Lieving, was filed to the bill, "or to so much thereof as they are
advised it is necessary or material for them to answer."

They admit that Nease was the owner in fee of the tract of
land described in the bill, on the 18th day of July, 1894; admit
the execution of the note, judgment thereon, and non-payment

thereof, as alleged; admit the conveyance of the land by Nease to Lieving; but "say that about one year before said judgment was rendered, respondent, George M. Nease, sold and conveyed to said defendant, Henry Lieving, for the sum of $800.00, the tract of land, and respondents and each of them deny that said deed was made to hinder, delay or defraud the said plaintiff."

"Respondents and each of them say that said deed for said tract of land from said George M. Nease to said Henry Lieving was made in good faith and in truth and in fact, the consideration, $800.00, stated in the said deed, was paid to said George M. Nease by said Henry Lieving. And said Henry Lieving says that the allegation in said bill wherein he is charged with having knowledge of the intent on the part of said Geo. M. Nease to defraud the plaintiff and other creditors of said Nease, and that this respondent Henry Lieving participated therein, is not true." Respondents also answered the specific interrogatories, and verified their answer as prescribed by statute. Depositions were taken and filed by both plaintiff and defendants. Sayre did not make any appearance; and as to him, the bill was taken for confessed. On the 17th day of May, 1901, the cause was heard upon the bill, taken for confessed as to defendant, Sayre, and its exhibits; upon the joint and separate answer of Nease and Lieving, with general replication thereto; and upon the depositions taken and filed as aforesaid; whereupon the court decreed that the defendants, Nease and Sayre, do pay to the plaintiff, $725.83, with interest thereon, until paid, and the costs of suit; that the said deed from Nease to Lieving be set aside and held for naught as to plaintiff's said demand; and that said indebtedness constitutes a valid and subsisting lien on said fifty acres of land. This is the decree appealed from.

The answer in its denials is not as specific and positive as it might be; but its sufficiency or insufficiency is not necessarily a question to be here determined, as this appeal can be decided on other grounds.

The interogatories contained in the bill are as follows:

"*First.* Did you, Henry Lieving, know at the time of the said conveyance, or had you been informed at the time of said conveyance that the said George M. Nease had signed a note to the said James L. Knight along with C. C. Sayre, for five hundred

dollars, or any other sum, for a loan of money or for any other thing?

*Secvond.* Did you, Henry Lieving, pay any money to George M. Nease by reason of said conveyance, and if so, how much and where did you obtain the said money, and from whom?

*Third.* How far do you live from the residence of the said George M. Nease and how long have you continued to reside within that distance of him, the said George M. Nease?

*Fourth.* What relation were you to the said George M. Nease at the time of the said conveyance, and how long had such relation existed between you and him?

*Fifth.* Who is now living upon the property conveyed to you by George M. Nease by the deed hereinbefore referred to?

*Sixth.* If you paid any money to George M. Nease for said land did you borrow it, and if so. from whom did you borrow it, and have you paid the party back from whom you borrowed?

If you have paid the money back to the party from whom you borowed it, state where you got the money and when, with which to pay the money back to the party from whom you borrowed it."

And said plaintiff also propounds the following interrogatories, which the said George M. Nease is asked and required to answer under oath:

"*First.* How much money did you, George M. Nease, receive from Henry Lieving for the transfer of your land as set out and described in this bill?

*Second.* When and where did you receive said money?

*Third.* What have you done with said money, state particularly how you have disposed of the same; whether you have any left of it, and if so, how much and where it is?

*Fourth.* What relation were you to Henry Lieving at the time of the transfer of said land by him to you, and what relation are you now to him?

*Fifth.* Do you still live upon the land which you transferred to Henry Lieving?

*Sixth.* What property did you own at the time of said conveyance made by you to said Henry Lieving, where was it located, what was its character and what was its value?"

Lieving, in answer to the special interrogatories thus propounded to him, says that several months before the conveyance was made, he knew that Nease and Sayre had executed the note

to plaintiff for five hundred dollars; but, at the time of said con-
veyance, he understood and thought that said note had been paid
off by Sayre; that for said conveyance he paid Nease seven hun-
dred dollars cash, which he had had on hand *for some time;*
and also cancelled a debt for one hundred dollars, due from him
to respondent; that he lived about one mile from Nease, and had
so resided about eighteen years; that, at the time of the convey-
ance, he was the father-in-law of Nease, and had been for about
seventeen years; that Mary L. Nease, mother of Geo. M. Nease,
had dower in the tract of land when purchased by respondent,
which dower had been assigned and set apart to her by agree-
ment; that since said assignment and allotment, said Geo. M.
Nease had been living with his mother upon the dower part of
the land; that the residue thereof, had been in possession and
under control of respondent and his tenants ever since his pur-
chase thereof; that respondent did not borrow any of the money
so paid to Nease for said land; and that said respondent had
said money on hands; and had been saving the same up for sev-
eral years. · Defendant, Nease, in answer to said several special
interogatories propounded to him says, that he received from
Lieving for the conveyance of the land, seven hundred dollars
in money, one hundred dollars of which was paid to him by Liev-
ing on the 28th day of May, 1897, at the office of John E. Beller,
in Point Pleasant; that six hundred dollars thereof was paid to
him by Lieving on the 1st day of June, 1897, at his home in
Graham District of said County; that this money was paid to
him by Lieving as part consideration for the land conveyed to
him by deed, dated on the 28th day of May, 1897; that the bal-
ance of the consideration, mentioned in the deed, to-wit, the sum
of one hundred dollars was for a debt which he owed to Lieving,
and which debt was cancelled by the making of said deed; and
that said Lieving paid seven hundred dollars in cash. He fur-
ther states that he paid out and used said money as follows: To
L. W. Brown, $37.50; P. L. Roush, $110.00; for cow, $22.50;
for 1897 taxes, $8.91; Marion Rousch, $25.00; S. E. McMillen,
$60.00; Bertha McDaniel, $28.00; Bentz and Haywood, $5.00;
G. M. Rickard, $65.00; Dr. L. F. Roush, $26.00; G. McCloud,
$4.00; O. A. Kent, $6.50; Waid Cross, $305.00; J. W. Leiving,
$95.00; that the balance, $203.54, was used by him for main-
tenance and care of himself and family, and that he then had

none of said money; that he was the son-in-law of Lieving, at the time of the conveyance, and had been such since 1882; that he then lived with his mother on the dower part of said land; that her house is on the dower part of said land; that at the time of the conveyance to Lieving, he owned no other real estate; that he then owned a cow of the value of $22.50; a watch, $25.00; a calf, $5.00; plow, $3.00; harrow, $1.00; hay fork, $2.00; and saddle, $2.00.

The said interrogatories having been thus answered, the question arises, as to the effect, if any, which should be given to said answers, either in favor of the plaintiff or of the defendants. It has been suggested that a defendant's answers to specific interrogatories thus propounded are evidence for him. Whatever the general equity practice in this particular is, or may have been, we hold that this question is now controlled in this State by our statute.

In Story's Eq. Pl., (10th ed.) sec. 38, it is said: "It is clear from what has been already said, that the *interrogating part* of a bill is not absolutely necessary; because, if the defendant fully answers to the matters of the bill, with their attendant circumstances, or fully denies them in the proper manner on oath, the object of the special interogatories is completely accomplished. In the old forms of bills there accordingly were no special interrogatories. But from the considerations already mentioned, the insertion of special interrogatories is often highly useful to sift the conscience of the defendant, and is almost universal in practice, except in amicable suits. In truth, without such interrogatories, it would be impracticable, in many cases, to extract from a reluctant defendant the facts and circumstances, so as to justify any decree." Bart. Chy. Pr., Vol. I, 279; Fletcher's Eq. Pl. & Pr., sec. 76, and cases there cited. These authorities establish conclusively that the interrogatories are a part proper of the bill; and that the answers thereto are a part of the *answer to the bill.* The interrogatories and their answers are distinctively parts proper of the bill and answers respectively in this cause. The interrogatories are inserted in the bill before the prayer and verification thereof; and said answers thereto are also in the body of the general answer to the bill.

Our Code, chapter 125, section 38, declares: "If the plaintiff desire the defendant to answer the bill on oath, he must verify

his bill by affidavit, and if the bill be so verified, the defendant must, in like manner, verify his answer. But if the bill be not verified, the defendant need not verify his answer, and if he does so it shall not be entitled to any more weight in the cause than if it had not been verified." In section 59, of same chapter, it is provided: "When a defendant in equity shall, in his answer, deny any material allegation of the bill, the effect of such denial shall only be to put the plaintiff on satisfactory proof of the truth of such allegation, and any evidence which satisfies the court or jury of the truth thereof shall be sufficient to establish the same."

In the case of *Rogers* v. *Verlander,* 30 W. Va. 619, 639, JUDGE GREEN, in discussing this question, says: "The appellant's counsel, it is true, claims that the allegations in the answer of Mary A. Rock in reference to the consideration paid by her to J. W. Verlander for said three acres of land conveyed by this deed, are to be regarded as evidence in her behalf, against the plaintiff and other creditors of J. W. Verlander, as they were responsive to the allegations on the subject in the bill. * * * To sustain his position that these allegations in the answer are to be considered as evidence for Mary A. Rock against the plaintiff, as they are responsive to allegations in the bill, the appellant's counsel refer to 2 Story Eq. Jur. sec. 1, 528, and other text-writers. These authorities simply lay down the rule, universally recognized, that prior to the passage of statute law regulating the pleading in chancery causes the rule in equity was, in the language of Story: 'In every case the answer of the defendant to a bill filed against him, upon any matter stated in the bill, and responsive to it, is evidence in his own favor.' And the reason given by Story and others for this rule, is: 'As the plaintiff calls upon the defendant on oath to answer an allegation of fact, which he makes, he hereby admits the answer to be evidence of that fact.' "

"But this effect of an answer responsive to a bill has been changed by our statute, as well as by the statute-law of most, if not all, of the states. In this State, under our statute laws, answers are not usually sustained by the respondent's affidavit; and their effect has been changed entirely. They are, under our statute law, no longer to be regarded as evidence in any case, whether they be sworn to or not. They are simply pleading,

and have effect as such only, just as a plea in a common law case, whether it be sworn to or not, has no effect as evidence. And hence, to use the language of section 36, chapter 125, Code 1887, p. 785, 'every material allegation of a bill, not controverted by an answer, shall, for the purpose of the suit, be taken as true, and no proof thereof shall be required.' This is the exact effect of a plea at common law. And section 38, chapter 125, Code 1887, p. 786, provides that, 'If the plaintiff desires the defendant to answer the bill on oath, he must verify his bill by affidavit, and, if the bill be so verified, the defendant must in like manner verify his answer; but, if the bill be not verified, the defendant need not verify his answer, and, if he does so, it shall not be entitled to any more weight in the cause than if it had not been verified.' In other words, the only weight the answer has in any cause is the weight attached to it as pleading. In no case is it entitled *now to any weight as evidence.* In this respect it stands on the same footing as pleas at common law. They are never entitled to the weight of evidence, though the particular plea may be required to be supported by affidavit; as, for instance, pleas in abatement, and pleas of *non est factum.* See section 39, chapter 125, Code W. Va., p. 786."

In the case of *Johnson* v. *Ruley,* 41 W. Va. 147, JUDGE BRANNON, in his dissenting opinion filed in the case, very tersely states the same views, as follows: "The bill charged that the deed was without consideration, voluntary and fraudulent. This called on the party to prove the consideration recited to be true. *Rogers* v. *Verlander,* 30 W. Va. 619 (5 S. E. 847). He did not do so, unless his answer be read as evidence. The rule was at one time that an answer responsive to the bill was conclusive evidence in favor of the defendant, unless overcome by two or more witnesses, or one witness and corroborating circumstances; but my understanding has been, and, as I had thought, also that of the profession, that our Code provisions had uprooted that rule and given the answer no force as proof, whether the bill be sworn to or not, or the answer sworn to or not, its only office being now to put the plaintiff to proof of those things in his bill calling for proof. Chapter 125, section 38, gives the plaintiff right, by swearing to his bill, to search the conscience of the defendant for purposes of discovery by thus requiring a sworn answer; but the answer is not evidence for defendant, as the section says that, if

the answer be sworn to, it shall not be entitled to any more weight than if unsworn. Now, this means that though the bill be sworn to, and the answer likewise, yet the answer shall not have any more force from being verified by oath. It does not mean that it is no evidence only in the case where the bill is not sworn and the answer is, leaving it to be implied that, where both are sworn, the answer is evidence. The plain meaning is that in no case is the answer evidence. This is plainer from section 59, declaring that when a defendant, in his answer, denies any allegation of the bill, its effect shall only be to put the plaintiff on proof of the truth of the allegation. Does not this apply to all answers, verified or not verified? Mr. Barton, in note in his Chancery Practice (page 396) so construes our statute. The very fact that section 59 declares that answers shall only put the plaintiff on proof, coupled with the fact that section 38, treating of those particular answers that are verified, declares that they shall have no more weight than if not verified, shows a cautious design in the lawmaker to pointedly and expressly so provide as to them." *Bronson* v. *Vaughn,* 44 W. Va. 406; *Kerr* v. *Hill,* 27 W. Va. 576, 605; *Jarrett* v. *Jarrett,* 11 W. Va. 584, 630; Bart. Chy. Pr., Vol. I, 424. Why should the interrogatories be evidence, and the other parts of the answer not be such?

It seems to be conclusively established by the authorities, cited, that the answer is not, nor is any part of it, entitled now to any weight as evidence. Its only effect is to put the plaintiff on proof of the allegations of his bill, denied by the answer.

Plaintiff proved by the deputy clerk of the county court of Mason County that Lieving was assessed on the personal property books as follows: For the year 1897, with three horses, total valuation, $100.00; two cattle, $25.00; two hogs, $10.00; one carriage, $15.00; and household and kitchen furniture, $30.00, total, $180.00; for the year 1896, with five horses, $150.00; six cattle, $60.00; two hogs, $10.00; farming implements, $10.00; one carriage, $5.00; and household furniture, $25.00, total, $260.00; for the year 1895, with personal property of a total valuation of $220.00; for the year 1894, with a total valuation of $340.00; for the year 1893, with a total valuation of $360.00; for the year 1898, with personal property all valued at $210.00, it being three horses, two cattle, one hog, two carriages, farming implements and household and kitchen furniture; but was not

for any of the years mentioned, assessed with any money, notes or bonds. The evidence also shows that Lieving was assessed for all of the years mentioned with fifty-five and one-half acres of land, at a valuation of $750.00; with five acres at $52.00, and for 1898, with fifty acres, valued at $546.00. Nease did not testify in the case, but Lieving took and filed his own deposition, in which he, in substance, states: That the sale and conveyance of land to him was true and honest; that he could not give the dates when he got the money with which he paid for the land; that part of the money, he got from his wheat crop, but just how much, he did not know; part he got from the sale of young cattle and hogs; and some of it, just how much he did not know, was money he already had; and that he sold the cattle and hogs mentioned by him *just before he bought the land.* On cross examination, he stated that he supposed he owed on the 1st day of April, 1897, $300.00 to $400.00; that he owed Samuel Roush the largest sum—he could not state the amount exactly—about $200.00; that he thought less than $200.00—how much less, he did not know; that Roush held two notes; that he did not recollect the amounts; that he could not tell what other parties he owed on April 1, 1897, but would find out, when he went home. He could not state how much wheat he sold, nor how long before the conveyance of the land to him, he sold it; could not say who bought the wheat, nor how much per bushel he got for it. He could not state how many acres of wheat he had in 1896; was unable to state *how much wheat he sowed on his own place, in* 1896; he could not state who threshed his wheat crop in 1896. He stated that he had been renting from Henderson Sayre, but could not say whether he harvested wheat on Henderson Sayre's land in 1896, or not. He could not tell to whom he paid the money for the threshing. He supposed he sold twelve to fifteen head of cattle in 1897, but could not say who bought them, nor how much he got for them. He did not know from whom he bought the cattle. Did not know how many hogs he sold in 1897; could not say exactly how old they were when he sold them; *that he generally raised them;* and did not know how much per pound he got for the hogs sold in 1897, although they were sold by the pound. He stated that a part of the $100.00 which Nease owed him was an open account; that some of it had been standing for a long time, he did not know how long—he

could not tell. Witness also filed a statement showing that on April 1, 1897, he owed H. K. Coe, $17.70; W. A. Ellis & Co., $175.08; Waid Cross, $24.90; J. C. Hayman, $10.45; H. W. Sayre, $21.50.

The deed acknowledges a cash consideration of $800.00 paid, on the date of the deed, to Nease by Lieving, yet the testimony of Lieving, if it is to be believed, shows that only $100.00 was then paid, and that $600.00 was afterwards, on the 1st day of June, 1897, paid by him to Nease. Lieving says that he then had the $700.00. Why was it not all paid then, instead of the $100.00? It is fair to presume that the $100.00 was paid in the presence of Beller, in his office, if it was so paid, because he as notary public appears to have taken and certified Lievings acknowledgment of the deed. Why Beller and Nease did not testify to this matter, is not explained. In as much as the deed is attacked as voluntary and fraudulent, this ommission to testify raises a strong presumption that Beller and Nease would not have supported Lieving's statement regarding the payment of the $100.00, had they given their evidence. It is also shown that Lieving and Nease were father-in-law and son-in-law; had sustained that relation for about seventeen years; and for all that time had lived within one mile of each other. They must have been thoroughly conversant with each other's business relations, and financial conditions. Lieving says that he knew of the execution of the note by Nease and Sayre to Knight for $500.00, but was informed that it had been paid by Sayre. Of whom he obtained the information he does not say; certainly not from Knight who could, and no doubt would, have willingly given him the correct information about the matter. He says he generally sold about four hundred bushels of wheat, in the year, but cannot state who bought it, or how much per bushel he received for it. He also says that the crop he sold shortly before he bought the land was raised by him the year before. He swears that he sold twelve or fifteen head of cattle in the spring of 1897, which were over one year old, yet his assessment for that year shows only two head of cattle, valued at $25.50. As above shown, the largest valuation of personal property with which he was assessed was $360.00 in 1893, and the smallest, $180.00, in 1897. The next smallest was $210.00 in 1898. The list of his creditors filed by him shows quite a number of them. It is not probable

that Lieving could have concealed from the assessor and his cred-
itors, all trace of the $700.00, and the property claimed to have
been sold by him, but not assessed, if he had possessed the same,
as stated.   He testifies that he was sixty-three years old, and had
never done anything but farm.   He was a man fully matured,
with nothing to divert his mind from his usual vocation, yet he
cannot, as it seems, recollect, the stock owned by him on his
farm, or the wheat produced by his toil.   He can, however, pre-
pare and file with apparent great accuracy, the names of his sev-
eral creditors, with the exact sums due to them respectively.
This testimony is so contradictory and unreasonable that we can-
not accept it as a guide by which the rights of the parties to this
suit must be determined.

The statement of Nease filed with his answer is not less re-
markable.   He gives the names of his several creditors, with the
exact amount paid to each.   The amounts so given aggregate
$496.46, leaving the net balance of $203.54, of the $700.00,
which balance he used in the maintenance and care of himself
and his family.   No receipts are exhibited by him for any of said
disbursements.   This answer and statement, however, are not
evidence, as we have shown. .

In addition to this, Nease yet owed the debt; he sold his home,
his only land; and has failed to explain the transaction by his
own evidence.

The rule, as to proof of fraud is stated in 8 Am. & Eng. Enc.
Law, 654, as follows:   "It is not always necessary, however, that
direct affirmative or positive proof of fraud be given.   It may be
and usually is proved by circumstantial or presumptive evidence.
If the evidence is sufficient to satisfy the mind and conscience of
the existence of the fraud, it will be sufficient, although it does
not lead to a conviction of absolute certainty.   The fraud need
not be proved beyond a reasonable doubt.   *Ballard* v. *Chewning,*
49 W. Va. 508, 519.   It was incumbent on Lieving to show that
the deed was made for a valuable consideration.   *Rogers* v. *Ver-
lander,* 30 W. Va. 619; *Childs* v. *Hurd,* 32 W. Va. 68; *Cohn* v.
*Ward,* 32 W. Va. 34; *Haman* v. *Ward,* 32 W. Va. 507; *Spence* v.
*Smith,* 34 W. Va. 697.   This he has not done.   It also satisfac-
torily appears from the facts and circumstances in this case, that
the deed is fraudulent as to plaintiff's demand.   *Goshorn* v.

*Snodgrass,* 17 W. Va. 717; Hogg's Eq. Prin., sec. 180; *Id.* secs. 187, 188.

There is no error in the decree complained of. It is, therefore affirmed; and the cause must me remanded to the circuit court of Mason County, to be therein further proceeded with according to the rules and principles governing courts of equity.

*Affirmed.*

DENT, JUDGE, (*concurring*) :

I concur in the syllabus and conclusion in this case, but not in all that the reasoning or language used may import.

Section 59, Chapter 125, Code, applies only to bills for relief and then only to the effect of a denial in an answer of a material allegation contained in a bill and provides that such denial shall only "put the plaintiff on satisfactory proof of the truth of such allegation, and any evidence which satisfies the court or jury of the truth thereof shall be sufficient to establish the same." This does not change the former practice except as to the quantity of proof required to overcome the denial in an answer of an allegation contained in a bill. 2 Tuck. Com., 493. In all other respects the force of an answer remains unchanged. This statute does not apply to bills purely for discovery. It would be a strange anomoly to permit the plaintiff to apply for a discovery and then after the discovery is had, permit him to proceed to overcome it by proof in the same suit. He may not use the discovery obtained, but if he does use it he vouches for its truth; otherwise he would be permitted to prove and disprove at the same time.

Where a discovery is sought in a bill for relief, the plaintiff is bound by the answer in so far as it is responsive to the bill and free from evasion, unless it is overcome by evidence which satisfies the court that it is false. This clearly is within the meaning of the statute. 1 En. Plead. & Prac. 914. So this Court held in the case of *Johnson* v. *Riley,* 41 W. Va. 147. A wrong construction entirely is put upon section 38, chapter 125, Code, which reads as follows: "If the plaintiff desire the defendant to answer the bill on oath, he must verify his bill by affidavit and if the bill be so verified, the defendant must in like manner verify his answer. But if the bill be not verified the defendant need not verify his answer, and if he does so, it shall not be entitled

to any more weight in the cause than if it had not been verified." By a misconstruction, the latter clause of the last sentence is made to apply to the first sentence so as to make it read, "If the plaintiff desire the defendant to answer the bill on oath, he must verify his bill by affidavit, and if the bill be so verified, the defendant must in like manner verify his answer, *and if he does so, it shall not be entitled to any more weight in the cause than if it had not been verified."* This construction is so unjustifiable as to be almost humorous. The meaning of the statute is too plain for any such misconception, and this is that if the bill be verified the answer must likewise be verified, and if so, it has the same force and effect as it always had, except as modified by section 59, cited. But if the bill be not verified, the answer need not be, and if it is, it shall have no more force and effect than if it were not so verified for the very good reason that the plaintiff, in not verifying the bill, has not appealed to the defendant's conscience. If, however, the plaintiff does verify his bill, and thereby appeals to the defendant's conscience, there is no good reason why the answer in so far as responsive to the bill should not be taken as true until impeached by evidence satisfactory to the court. And there is good reason why it should be taken as true until overcome by satisfactory proof, and this is that the defendant as to such matter has been virtually made a witness of by the plaintiff who put him to his oath, and having thus testified, it would be merely productive of delay to require him to again testify, unless the plaintiff shows by satisfactory proof that his responses to his interrogatories are false at least in some particular. If the plaintiff cannot do this, it must be presumed that if the defendant is again interrogated, his responses will be to the same effect. One of the objects of having the bill verified is to do away with the necessity of taking proof, and if the defendant has purged his conscience, and the plaintiff can show nothing to the contrary why delay the case for further proof? This is a long established practice which the statute has merely emphasized, except as to the amount of proof required instead of having overthrown, and it is a practice that should be retained for the expeditious disposition of causes, and the dispatch of business.