CENTRAL TRUST COMPANY, *Exr. v.* FLORENCE ATKINSON AVIS *et al.*

(No. 7309)

Submitted May 25, 1932.   Decided June 7, 1932.

*Price, Smith & Spilman* and *J. M. Woods,* for appellant.
*J. N. Kenna* and *S. B. Avis,* for appellee Central Trust Co.

LITZ, JUDGE:

This an appeal by a creditor from a decree administering an insolvent estate of a decedent.

S. B. Avis died testate June 8, 1924.   The suit was instituted May 3, 1929, by Central Trust Company, as executor of his estate, praying for the settlement of its accounts before a commissioner of the court; the ascertainment of the liabilities, in the order of priority, against the estate; the application of the personal property thereto; and for general relief.   By order of July 24, 1929, the cause was referred to a special commissioner to take, state and report an account, showing the personal and real estate; the debts in order of priority; and such other pertinent matters as any party in interest may require or the commissioner may deem proper.

The commissioner reported the liabilities of the estate, in their order of priority, as follows: Class A, funeral expenses,

$172.80; Class B, "miscellaneous indebtedness", $39,218.88, Class C, "voluntary obligations", in favor of appellant, National Shawmut Bank of Boston, $160,863.83. Overruling exceptions of the bank to the report, the court directed payment of the debts in the order therein stated. From this ruling, the bank has appealed. It assigns error also to allowances (as excessive), of $1,000.00 to the commissioner for services in making up and filing his report, and of a $5,000.00 fee to counsel for the executor.

The indebtedness due appellant arose as follows: On November 1, 1917, Cumberland Mountain. Coal Company, 40% of the capital stock of which was owned by Avis and 60% by F. W. Estabrook, obtained a loan of $50,000.00 from appellant, for which it executed its note indorsed by Estabrook. Renewals of this note from May 1, 1919, were indorsed by Estabrook and Avis. On November 5, 1917, the coal company obtained a loan of $30,000.00 from appellant, for which it executed its note indorsed by Estabrook. Renewals of this note from June 3, 1919, were also indorsed by Estabrook and Avis. On October 6, 1923, the coal company obtained a loan of $38,500.00 from Central Trust Company, for which it executed its note indorsed by Avis. After receiving payment of $21,000.00 thereon, Central Trust Company transferred the note, without recourse, to appellant.

The ruling of the special commissioner and the trial court is based upon chapter 85, section 25, Code 1923 (44-2-21, Code 1931), which prefers all other demands against the estate of a decedent to the "voluntary obligations"; the theory of the commissioner and the court being that the obligation of an accommodation indorser of negotiable paper is voluntary. The fallacy of this position is self-evident. A voluntary obligation is one assumed without valuable consideration. "Voluntary", in law, means without valuable consideration. Webster's Dictionary; Black's Law Dictionary. A voluntary conveyance is a conveyance without valuable consideration. *Rogers* v. *Verlander*, 30 W. Va. 641, 5 S. E. 857; *Hopkins* v. *White*, 20 Cal. App. 234, 128 Pac. 780. A valuable consideration, however, does not depend

upon a benefit to the promisor. "A valuable consideration may consist either in some right, interest, profit or benefit accruing to the one party or some forbearance, detriment, loss or responsibility given, suffered, or undertaken by the other." *Tabler* v. *Hoult,* 110 W. Va. 542, 158 S. E. 782. Here, consideration moved not only from the promisee, but the promisor held 40% of the capital stock of the corporation receiving the benefits of the promise. The claims of appellant are, therefore, of equal dignity with other common indebtedness.

The affidavit or certificate of the special commissioner to his report is not in the form required by the statute to entitle him to any compensation. It merely states that affiant believes "his fee of $1,000.00, taxed as a part of the cost" of the suit, for taking and reporting the account, is reasonable, and, in his opinion, conforms with the statute. Chapter 59, article 1, section 8, Code 1931, provides: "A commissioner, except where it is otherwise specially provided, shall have for any service such compensation as the court of which he is commissioner may from time to time prescribe, not exceeding one dollar where less than an hour is employed, and if more than an hour be employed, not exceeding the rate of one dollar for each hour, or in lieu thereof, twenty-five cents per hundred words of his report, as the commissioner may elect. A commissioner returning a report shall annex thereto a certificate, under oath, that he was actually and necessarily employed for a number of hours, to be stated therein, in performing the services for which the fees stated at the foot thereof are charged. *Until such certificate is made, no such fees shall be allowed or paid.*"

In view of the incompleteness of the record, as submitted, we cannot say that the allowance to attorneys is excessive.

The decree, complained of, is reversed in so far as it prefers the payment of "miscellaneous indebtedness" of the estate to the claim of appellant and allows compensation to the special commissioner, without the required affidavit; and affirmed in all other respects.

*Affirmed in part; reversed in part; remanded.*

HATCHER, PRESIDENT, (concurring):

The order referring this cause to the commissioner directed him to state an account showing, among other things, the priorities of the decedent's debts. In attempting to do so, the commissioner, according to his affidavit, performed legal "research work requiring days of laborious work" during which he devoted his time constantly "so that there might not be any break in the process of reflective thinking on the matter, thus obviating later retracing the mental process." For the indefinite time spent, as above outlined, the commissioner sought and was allowed remuneration.

In some jurisdictions it seems to be the practice to submit intricate legal problems to a commissioner where all parties to the litigation consent. But there was no such consent here. Under our practice, the province of the commissioner ordinarily is to procure "details of facts" and supply the court "with the requisite data on which to base its judicial action." 10 R. C. L., p. 508, sec. 290. As was more fully said in *Kimberly* v. *Ames*, 129 U. S. 512, 523-4, "A master in chancery is an officer appointed by the court to assist in various proceedings incidental to the progress of a cause before it, and is usually employed to take and state accounts, to take and report testimony, and to perform such duties as require computation of interest, the value of annuities, the amount of damages in particular cases, the auditing and ascertaining of liens upon property involved and similar services. * * * It is not within the general province of a master to pass upon all the issues in an equity case." See generally Hoggs Eq. Pro. (Carlin) sec. 659; Barton's Chy. Pr. (3d Ed.), ch. 32, secs. II and IV.

It is the duty of the attorneys in the cause to present the law to the court. If that presentation is not sufficient for decision, it is then the duty of the trial chancellor himself to make such legal research as is requisite, or have the attorneys do so. While advice of a commissioner on the law may be helpful to the trial chancellor in some instances, it certainly is not contemplated under our statute or practice that the commissioner should perform legal research work. On the contrary, Code 1931, 56-7-4, specifically provides that

when a commissioner "doubts as to any point which arises before him in taking an account," he may submit the point to the court or the judge in vacation. Under established practice, the commissioner may also report in the alternative on a controverted legal point.

The effect of the innovation proposed by the commissioner here would be to impose on an estate in litigation payment for labor which the attorneys in the first instance and the court in the second are paid to perform. Such a duplication of fees cannot be permitted.